*MHN*



FILED

DEC - 3 2007
DEC -3 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMIS NORRIS                    )
                                 )
            Plaintiff,           )
                                 )
                                 )        **07CV6776**
                                 )     **JUDGE GUZMAN**
        vs.                      )     **MAG. JUDGE ASHMAN**
                                 )
                                 )
CITY OF CHICAGO,                 )
a municipality,                  )
JAN ARNOLD, in her official      )
Capacity and individual capacity;)
and The DEPARTMENT OF            )
AVIATION, City of Chicago,       )
            Defendants           )

## COMPLAINT AT LAW

NOW COMES the Plaintiff Thomas Norris (Norris), by and through his attorney, Martin

M. Stack, and complaining of the Defendants, City of Chicago; Jan Arnold, Chief

Administrative Officer, Department of Aviation; and the Department of Aviation, City of

Chicago and states as follows:

### CAUSE OF ACTION

1.    This action is brought pursuant to 42 U.S.C. sec. 1983, the U.S. Constitution, the

Laws of the State of Illinois and the Illinois Constitution et seq. to redress the deprivation

1

under the color of law of the Plaintiff's rights as secured by the Constitution of the
United States.

2.    Specifically, as a result of egregious misconduct by the City of Chicago, employees
of the City of Chicago, and specifically Jan Arnold, among others, Plaintiff, Thomas
Norris was wrongfully denied promotions and other emollients of employment.

3.    As a further result of the egregious misconduct by the Defendants, Plaintiff Thomas
Norris was permanently and severely injured.

## JURISDICTION and VENUE

4.    This court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
sections 1331 and 1343 et seq.; the Constitution of the United States; and supplemental
jurisdiction as codified in 28 U.S.C. section 1367(a).

5.    Venue is proper pursuant to 28 U.S.C. sec. 1391(b). All parties reside in the judicial
district, and the events giving rise to the claims asserted herein occurred within the
district.

6.    This cause is also brought pursuant to the case Shakman v. Democratic
Organization of Cook County, et al. case # 69 C 2145.

## PARTIES

At all relevant times the Plaintiff, Thomas Norris, ("Norris") was a resident of Cook
County, State of Illinois and is employed by Defendant City of Chicago as a Safety
Specialist III.

2

7.    Plaintiff Norris was at all times relevant a citizen of the Untied States and a resident of Chicago, Cook County, Illinois. Plaintiff Norris exercised his option to opt-out of the Shakman Decree Accord on September 27, 2007, copy of the opt-out form is attached.

8.    At all relevant times Defendant Jan Arnold was employed by the City of Chicago as Chief Administrative Officer for the Department of Aviation and in supervisory capacity over Norris.

9.    At all relevant times, Defendant City of Chicago is a municipal corporation organized under the laws of the State of Illinois.

10.    At all times relevant the Department of Aviation is an operating income producing sub-division of the City of Chicago, a municipal-corporation under the laws of the State of Illinois.

## FACTS

11.    Sometime in 1993 Plaintiff Norris applied for the position of Safety Specialist III in the Department of Aviation for the City of Chicago.

12.    Plaintiff maintains that he was not hired 1993 as at that time he did not have a political sponsor.

13.  From 1993 to 1997, Plaintiff continued to submit applications to the City of Chicago for numerous vacant positions that the City of Chicago publicly posted to be filled.

14.  Sometime in 1997 due to a posting, Plaintiff Norris again applied for Safety Specialist III in the Department of Aviation and again Norris was not sponsored by any political organization.

15.  Despite his lack of association with any Ward organization or democratic organization, Norris was hired by the Defendant City of Chicago in 1997; again this despite not being associated with any regular democratic organization.

16.  From 1997 to 2003 Plaintiff Norris worked as a Safety Specialist III at Midway International Airport.

17.  During the period of his employment between 1997 and 2003 Plaintiff Norris received above satisfactory employment reviews, in fact all of his reviews were in the excellent category.

18.  In 2003 the person who the Department of Aviation employed as Safety Director at Midway International Airport left city employment, this left a vacancy for the position of Safety Director.

19.  As a result of that vacancy, the Department of Aviation, in conjunction with the Department of Personnel posted the vacancy and began accepting application from prospective candidates.

**2003 Posting**

20.   In 2003 Plaintiff Norris came to learn that his direct supervisor, the Safety Director at Midway Airport had vacated that position thus affording him an opportunity to advance.

21.   Norris gathered information regarding the vacancy for Safety Director. As he had previous experience guarding Nike missile bases in Europe as a member of 509th Airborne Division in the United States Army, as well as the experience he gained through city and other employment and through the classes he attended, Norris applied for the position of Safety Director.

22.   At that time in 2003, with the Safety Director's job still vacant, Norris was instructed by his superiors to undertake the responsibilities and duties of Director's position on an "acting" basis. The Deputy Commissioner of Safety, Department of Aviation was among those in authority at the Department of Aviation who told Norris to perform his job and that of Acting Safety Director.

23.   Norris performed all the job responsibilities within his job classification as Safety Specialist III as well as those in the Safety Director's job classification, in essence and in fact Norris was doing work enumerated and categorized in two job classifications for the Department of Aviation. He was also instructed to sign in and out as "Acting" Safety Director.

24.   In regards to the designation of "Acting" Safety Director, Norris never received any written document authorizing him to serve in that capacity from either the Department of Aviation or from the Commissioner of the Department of Personnel. In fact, Norris now

understands that the title of "acting" was given to him without authorization by the Commissioner of Personnel as required in Rule III Section 4(3) then in effect at the time.

25.   The City of Chicago and specifically the Department of Personnel and the Department of Aviation violated the City's Personnel Rules when it designated Norris as acting Safety Director at Midway Airport. According to the City of Chicago's Personnel Rules, provisional appointments have a nine month duration.

26.   On information and belief, the decision to hire the Safety Director in 2003 rested with a Mr. John Townsend, a retired and formerly high ranking Deputy with the Chicago Police Department. Townsend was a lifelong resident of the 11th Ward. (Now deceased)

27.   At that time, Plaintiff Norris was one of two individuals who were found to be qualified for the subject position. The other individual was Mark McInerny, a Department of Aviation police officer with no previous safety experience. Mr. Mc Inerny like Mr. Townsend was a life long resident of the 11th Ward.

28.   Mr. Townsend made inquiries regarding the position and openly stated that he favored Mark McInerny. Mr. Townsend was told by at least one other Department of Aviation employee that Mr. McInerny was not as qualified as Plaintiff Norris. Thereafter, Mr. Townsend related to at least two Department of Aviation employees that he would not hire Norris and that he would not hire anyone if he had to hire Norris.

29.   As a result, neither candidate was hired and Plaintiff Norris continued to serve in the capacity of Acting Safety Director while performing his own duties as Safety Specialist III.

6

**2005 Posting**

30.   In 2005 the opening for Safety Director at Midway Airport was posted again.
Norris was the only name appearing upon the qualified list as Mr. McInerny had been
recently promoted from Sergeant to Lieutenant with the Department of Aviation Police.

31.   Norris was informed that since he was the only name appearing on the list, the
Department of Aviation would not hire him.

**2006 Posting**

32.   In July of 2006, the opening for the position of Safety Director of Midway Airport
was posted by the Department of Aviation and Norris again submitted his qualifications
for consideration for that position. He did so on-line through the City of Chicago's web
page on July 27, 2006. Norris also sent his qualifications with return receipt postage on
July 29, 2006.

33.   At or about the time the opening  for Safety Director, Midway Airport was posted a
Mr. William Lonergan, Plaintiff's supervisor, implied Plaintiff Norris to forget about
applying as he would not get be elevated to the position of Safety Director of Midway
Airport. According to Mr. Lonergan, Norris did not have the right people behind his
efforts to be so employed. Plaintiff Norris applied along with Mr. McInerny, a resident of
the 11th Ward. Again, Mr. McInerny was a member of the Aviation police with no prior
safety experience.

7

34.   During a phone conversation over the weekend of August 18, 2006 regarding Department of Aviation business, Mr. Mark McInerny informed Norris that he had been furnished a list of individuals released by the City of Chicago's Department of Personnel who were to be interviewed for the position of Safety Director at Midway International Airport.

35.   During that telephone conversation, Mr. McInerny informed Norris that Norris' name did not appear on the list and therefore he would not be given an interview.

36.   However, Mr. McInerny's name appeared on the list of qualified candidates.

37.   On August 20, 2006, Norris confronted his superior Mr. Lonergan regarding the fact that Norris' name did not appear on the list of qualified candidates.

38.   Lonergan informed Norris that he would look into the matter but he instructed Norris not to tell Jan Arnold, their superior, that he was helping Norris as Lonergan may "get in trouble" with Jan Arnold.

39.   On August 22, 2006 Norris called the Shakman Decree Hiring Monitor's office to complain about the fact that his name was not on the list of qualified candidates for the position of Safety Director. Norris also called the Office of the Inspector General to complain.

40.   Sometime subsequent to his calls to the Inspector General's Office and the Office of the Shakman Decree Monitor, Mr. Lonergan called Norris and informed him that he asked Jan Arnold about Norris' name not appearing on the list.

41.  Lonergan informed Norris that Jan Arnold told  Lonergan that the names appearing on the qualified list were pulled as a consequence of a 'lottery system" and that Norris was not lucky enough to have been pulled.

42.  After, Norris filed a complaint with the Shakman Decree Monitor he was subsequently interviewed by a Mr. William Rimkus, a representative with the Office of the Shakman Monitor.

43.  On August 28, 2006,  Mr. William Rimkus called Norris and explained that he reviewed the file and that Norris was qualified. Rimkus also explained that the file had been marked in such a way to show that Norris did not have any safety experience or any supervisory experience.

44.  William Rimkus also informed Norris that he was not only qualified for the position but that he was or should have been the leading candidate for the position of Safety Director at Midway Airport.

45.  Thereafter, Norris received a call from William Lonergan who told Norris to drop the entire matter as he did not want to see Norris "dissapointed".

46.  On September 7, 2006 Norris received a call from Maribeth Anderson, Mr. Lonergan's assistant, who explained to Norris that something was wrong as his name did not appear on the list of candidates to be interviewed for Safety Director at Midway Airport. Ms Anderson, knowing that Plaintiff Norris had been on the in previous years, arranged for Plaintiff Norris to be placed on the list. She also told Norris that the list contained the name of Bobby Valdez who had been previously terminated by the Department of Aviation.

9

47.    After the complaining to the Office of the Shakman Monitor, Norris received a

letter, post marked September 19, 2006, from Ms. Jan Arnold, Chief Administrative

Officer, Department of Aviation. The letter explained that Norris had been selected as a

candidate for the position of Safety Director. The letter also stated that if he was

interested in an interview that he should contact a Patricia Linton no later than

September 18, 2006. Norris received this letter (postmarked September 19, 2006)

sometime after September 20, 2006.

48.    On information and belief Norris maintains that Jan Arnold deliberately sent him a

late notice so as to thwart his chances of being interviewed in 2006.

49.    Prior to this incident, Plaintiff Norris had been confronted by Defendant Arnold on

numerous occasions. She referred to him as a "Neanderthal," in statements to other

Department of Aviation employees she openly denigrated his work and on numerous

occasions refused to speak to him regarding safety issues at Midway Airport.

50.    Regardless, Norris submitted his name and qualifications to be considered for

Safety Director at Midway Airport. Despite Defendant Arnold's attempt to obstruct

Norris right to be interviewed for the position of Safety Director, Norris subsequently

received an interview.

51.    Thereafter on information and belief Norris was evaluated to be suitable for the

position of Safety Director at Midway Airport and in fact, on information and belief, was

the leading candidate among the field of otherwise qualified candidates.

52.    Thereafter, Norris was given unofficial information that he was not going to be

selected as the Safety Director at Midway Airport. Norris also learned that the City of

10

Chicago was going to "throw out" the list upon which he ranked as most qualified for the Safety Director's position.

**Clout List**

53.  On or about June 6, 2006 a list of politically sponsored city employees maintained by the Mayor's Office was published by the Chicago Sun-Times. Norris' name appears on the list. Norris maintains that he was not politically sponsored by any ward organization, person or otherwise.

54.  Norris maintains that the listing of his name has caused him to be passed over for promotion.

55.  Norris complaint to the Shakman Hiring Monitor although seemingly investigated was never appropriately addressed and the matter was never disposed of in any fashion.

56.  Norris came to find that even though he had complained to the Shakman Decree Monitor that he was never promoted into the position but continued to do the work required by both job classifications, i.e. Safety Specialist III and Safety Director of Midway Airport.

57.  The Office of Inspector General did not respond to Norris' 2005-2006 complaint.

58.  On information and belief Norris maintains that the Hiring Monitor has not adjusted his denial of promotional rights due to the fact that he appeared on "clout list."

**2007 Posting**

59.  In September of 2007, after the May 31, 2007 Shakman deadline, Norris came to learn that the Department of Aviation had again conducted interviews for the position of

11

Safety Director of Midway Airport and also came to learn that he was not on the list to be interviewed for this position as he had been in the past.

60.  Norris came to learn that one of the favored candidates was a Patrick Taggart, a resident of the 11th ward. Norris was told this by another Department of Aviation employee, a Mr. John Mala Barbra also from the 11th Ward.

61.  Norris also came to know that the representative from the Shakman Monitor's office, Mr. William Rimkus, was under the false belief that Norris had been hired as Safety Director as Rimkus inquired as to the whereabouts of the person hired the year before, referring to Norris.

62.  Norris again complained to the office of the Shakman Monitor and the Inspector General's Office.

63.  On information and belief, the City of Chicago, since the appointment of the Shakman Decree Monitor, maintains a do not hire list- a do not promote list.

64.  On information and belief the City of Chicago refuses to promote any one employee serving in a provisional appointment ("Acting") capacity as they would have an unfair advantage to gain a promotion into the position for which they are currently serving as Acting.

65.  On information and belief, the City of Chicago through its agents have deliberately ignored the Plaintiff Norris' complaints.

## COUNT I

### Sec. 1983 Due Process Claims –
### City of Chicago, Jan Arnold

66.   Norris re-alleges, restates and incorporates by reference paragraphs 1-63 of this

Complaint as paragraphs 1-65 of Count I, as though fully set forth herein. Defendants

while acting under the color of law and within the scope of their employment deprived

Plaintiff Norris, of his constitutional rights to due process. Each of the Defendants,

deliberately fabricated false statements and all the Defendants deliberately denied

Plaintiff Norris of his substantive and procedural due process rights, thereby causing him

to be injured.

67.   Norris has a property interest in his position as Safety Director III and a liberty

interest in his reputation, and was denied due process as he was not allowed to be

promoted and subsequently not allowed an interview for the position of Safety Director.

68.   The promotional process for Norris to advance to Director of Safety at Midway

Airport was a sham. The promotional process was completely subverted as the City of

Chicago was not going to promote Norris on merit but would deny him a promotion on

the basis that he was:

(a)Not from the right democratic ward organization; or
(b)That he was not involved in a democratic ward organization; or
(c)That the position was being held from him for a favored person; or alternatively,
(d) That his name appeared on list of politically sponsored city employees.

13

69.   On information and belief, there are at least two criteria for non-promotion as adopted by the City of Chicago and the Shakman Decree Monitor. Specifically and as it relates to Plaintiff Norris, (1) previous affiliation with a political organization and/or (2) that the Shakman Decree Monitor identified employees as having been in an "acting" capacity. So that Norris was not promoted on the basis that he was:

i.                         In an acting capacity; and/or
ii.                        Identified as being politically sponsored.

This rationale is arbitrary and capricious and has no rational basis in law or in fact as it denies promotional rights to a certain class of individuals based solely on identification with a title designation given to those employees acting in a position on a provisional basis by the City of Chicago to further its aims and goals and/or violates the federal and state constitutional rights of affected employees by denying them promotional or hiring opportunities bases solely on their rights of free association and free speech.

69.   As to defendant City of Chicago, its conduct in refusing to promote the Plaintiff Norris was intentional, willful and wanton and in contravention of its obligations under prior court orders. The City of Chicago acting through its agents and employees violated the Plaintiff's substantive and procedural due process rights.


70.   As a result of the Defendants violating his federal and state constitutional rights and his right to both procedural and substantive due process, Plaintiff Norris suffered and continues to suffer injuries.

WHEREFORE, the Plaintiff, Thomas Norris, prays for the following relief against The

City of Chicago and the Department of Aviation as follows:

a.      Promote Norris to the position of Safety Director and
b.      Award him compensatory damages for which he is entitled; and
c.      Prejudgment interest calculated at the prevailing rate; and
d.      Award him attorney's fees and costs pursuant to 42 U.S.C. sec. 1988; and
e.      Grant other such relief as this court deems just and appropriate.


## COUNT II

### Thomas Norris- Defamation- State Law Claim

71.    Plaintiff, re-alleges, restates and incorporates by reference, all above paragraphs for

paragraphs 1-70 of Count III of this Complaint at Law.

72.    Defendant City of Chicago through its agents and employees create a list of

individuals who were identified as being sponsored by labor organizations, elected

officials, ward organizations, and or other individuals and organizations.

73.    Plaintiff Norris name was placed on this list when the City knew or should have

known that Norris was not politically sponsored by an organization or person.

74.    Defendant City of Chicago passed this list with Norris' name on the list from

employee to employee thus publishing his name.

75.    Defendant City of Chicago knew or should have known that because it was a

governmental agency and subject to public disclosure laws enacted by the State of

Illinois, that the list would or could ultimately be subject to public scrutiny.

76.   Defendant City of Chicago with reckless disregard for Norris good reputation and integrity, placed Norris' name on the list without determining the accuracy of the list.

77.   The list was eventually disclosed and published in daily newspapers

78.   The publication and identification of Norris as a politically sponsored individual was false.

79.   The statements and writings regarding the list made by City of Chicago constituted defamation pre se by imputing an inability to perform or want of integrity in the discharge of duties of office or employment; and imputed a lack of ability in Norris' trade, business or profession.

WHEREFORE, the Plaintiff, Thomas Norris, prays for the following relief against the City of Chicago:

a.      Award of compensatory damages for which he is entitled; and
b.      Award him damages for injury to reputation; and
c.      Prejudgment interest calculated at the prevailing rate; and
d.      Punitive damages against Defendant City of Chicago; and
e.      Grant other such relief as this court deems just and appropriate.

## COUNT III

### Thomas Norris- Defamation- State Law Claim

80.   Plaintiff, re-alleges, restates and incorporates by reference, all above paragraphs for paragraphs 1-79 of Count III of this Complaint at Law.

81.   Defendant Arnold, on information and belief, marked Norris' 2006 promotional file in such a manner as to misstate his qualifications for the position of Safety Director at Midway Airport.

82.   The statements and writings made by Arnold were false.

83.   The statements and writing made by Arnold were read by numerous employees of the City of Chicago.

84.   The statements and writings made by Arnold constituted defamation pre se by imputing an inability to perform or want of integrity in the discharge of duties of office or employment; and imputed a lack of ability in Norris' trade, business or profession.


WHEREFORE, the Plaintiff, Thomas Norris, prays for the following relief against Arnold:

a.        Award of compensatory damages for which he is entitled; and
b.        Award him damages for injury to reputation; and
c.        Prejudgment interest calculated at the prevailing rate; and
d.        Punitive damages against Defendant Arnold; and
e.        Grant other such relief as this court deems just and appropriate.


## COUNT IV


### Intentional Infliction of Emotional Distress – State Law Claim

85.   Plaintiff Norris, re-alleges, restates and incorporates by reference all the above paragraphs for paragraphs 1-84 of Count IV this Complaint at Law.

86.   The acts of Defendant City of Chicago and Defendant Jan Arnold set forth in above paragraphs were extreme and outrageous. The Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause severe emotional distress to the Plaintiff, Thomas Norris.

87.   Defendant Arnold acted with the intent to deprive the Plaintiff Norris of his federal and state constitutional rights when she purposely delivered a notice to the Plaintiff Norris in an untimely fashion with the intent to harm him.

88.   Defendant City of Chicago, when given notice that its agent Defendant Arnold acted with the intent to harm the Plaintiff, adopted Defendant Arnold's acts by not redressing the harm done to Norris or by disciplining Defendant Arnold.

89.   The actions and conduct did directly and proximately cause severe emotional distress and physical ailments to the Plaintiff Thomas Norris.

90.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless disregard and/or indifference to the Plaintiff's rights.

WHEREFORE, the Plaintiff, Thomas Norris, prays for the following relief against the Defendants Jan Arnold and the City of Chicago:

a.       Award of compensatory damages for which he is entitled; and
b.       Award him damages for injury; and
c.       Prejudgment interest calculated at the prevailing rate; and
d.       Punitive damages against Defendants; and
e.       Grant other such relief as this court deems just and appropriate.

## COUNT V

## Whistle-Blower Act – State Law Claim

91.   Plaintiff's re-allege, restate and incorporate by reference, all the above paragraphs for paragraphs 1-90 of Count V of this complaint at Law.


91. 740  ILCS 174/15(b) (Elements of the Offense) provides in relevant part that:

An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

92. In addition 740 ILCS 30 (Damages), provides in relevant part that:

If an employer takes any action against an employee in violation of Section 15 or 20, the employee may bring a civil action against the employer for all relief necessary to make the employee whole, including but not limited to the following, as appropriate:
(a)Reinstate with the same seniority status that the employee would have had, but for the violation;
(b) back pay with interest;
(c) compensation for any damages sustained as a result of the violation including any litigation costs, expert witness fees and reasonable attorney's fees.

93. Plaintiff Norris sought help and aid from the Office of the Shakman Decree Monitor on August 24, 2006. In so doing, Plaintiff Norris complained to an investigative agency charged with the responsibility to monitor political hiring at the City of Chicago.

94. As a result of his complaints, Plaintiff Norris was contacted by Noelle Brennan in writing on September 6, 2006. He was also interviewed by William Rimkus, a representative/employee of the Shakman Decree Monior.

95. As a direct result of Plaintiff Norris' complaints against the Defendant City of Chicago, Defendant City of Chicago and Defendant Jan Arnold retaliated against Plaintiff Norris by attempting to keep him from interviewing from the position of Safety Director at Midway Airport.

96. Further, on information and belief, Defendant Arnold and the Defendant City of Chicago altered Plaintiff Norris application file for said position (Safety Director, Midway Airport) in such a way to make it impossible for him to be interviewed.

97. In further retaliation over the Plaintiff's act of complaining to the Shakman Decree Monitor, Defendant City of Chicago intentionally refused to interview the Plaintiff Norris in September of 2007 for a position for which he is exceptionally qualified, that of Safety Director, Midway Airport.

WHEREFORE, the Plaintiff, Thomas Norris, prays for the following relief against Defendant Arnold and Defendant City of Chicago:

a.   Promote Norris to the position of Safety Director;
b.   Award him compensatory damages for which he is entitled; and
c.   Award him damages for injuries; and
d.   Prejudgment interest calculated at the prevailing rate; and
e.   Award him attorney's fees and costs pursuant to 740 ILCS 30; and
f.   Grant other such relief as this court deems just and appropriate.

## COUNT V

### Indemnification

98.     Plaintiff's re-allege, restate and incorporate by reference, all the above paragraphs for paragraphs 1- 98 of Count VII of this Complaint at Law.

99. Defendant City of Chicago has an obligation to indemnify its employees 745 ILCS 10/9-15 in relevant part states:

    If any claim or action is instituted against

an employee of a local public entity based on an injury
allegedly arising out of an act or omission occurring within
the scope of his employment as such employee, the entity may
elect to do any one or more of the following:
(a) appear and defend against the claim or action;
(b) indemnify the employee or former employee for
his court costs or reasonable attorney's fees, or both,
incurred in the defense of such claim or action;
  (c) pay, or indemnify the employee or former
employee for a judgment based on such claim or action;,
or
(d) pay, or indemnify the employee or former
employee for, a compromise or settlement of such a claim
or action.
It is hereby declared to be the public policy of this
State, however, that no local public entity may elect to
indemnify an employee for any portion of a judgment
representing an award of punitive or exemplary damages.

100. The individual defendant Arnold was at all times relevant acting within the

course and scope of her employment.

WHEREFORE, pursuant to 745 ILCS 10/9-15 Plaintiff Thomas Norris demand

judgment against the Defendant City of Chicago in the amounts awarded to Plaintiff

Norris against the individual Defendant, Jan Arnold, by way of judgment or settlement,

including any and all amounts awarded fro damages, and costs and attorney's fees.

## COUNT VIII

### Respondeat Superior- State Law Claim

101. Plaintiff re-alleges, restates, and incorporates by refernce. All the above

paragraphs for paragraphs 1-101 of Count VIII of this Compliant at Law.

102. In committing the acts above, the Defendant Jan Arnold, was of and/or agents of

the City of Chicago, acting at all relevant times within the scope of her employment.

21

103.  Defendant city of Chicago is liable as a principal for all torts committed by its

agents.

WHEREFORE, Plaintiff Thomas Norris demands judgment against the City of

Chicago in the amounts awarded to Plaintiff Thomas Norris by way of judgment or

settlement as against Defendant Arnold, including any and all amounts awarded for

damages, and costs and attorneys fees. Plaintiff will not waive any punitive damages as

assessed against defendant Arnold, individually.


### JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to federal rule of Civil Procedure

38(b) on all issues so triable.


                                        Respectfully Filed


                                        Martin M. Stack



Martin M. Stack
100 West Monroe
Suite 1612
Chicago IL 60603
312-372-5695



FORM 1

received
9/27/07

# OPT-OUT REQUEST FORM

## AGREED SETTLEMENT ORDER AND ACCORD
### Entered in Shakman, et al. v. Democratic Organization of Cook County, et al.
### (the "Shakman Case")

Date: *9-25-2007*

Noelle C. Brennan
Shakman Decree Monitor
Brennan & Monte, Ltd.
20 S. Clark
Suite 1530
Chicago, IL 60603

Name: *THOMAS P. NORRIS*

Address: *6463 SO LONG*
*CHICAGO, IL. 60638*

Telephone: *(773) 581-0070*

Check the Class(es) to which you belong (failure to identify a class has no effect on your right to assert a claim in any capacity in any subsequent litigation.):

✓ Current City Employee
___ Former City Employee
___ Applicant for Employment with the City
___ Candidate for Public Office
___ Registered Voter

I wish to be excluded from membership in the settlement classes in this case.

*Thomas P. Norris*
(Signature)

**Error! Unknown document property name.**