

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAR 27 2008    **NR**



MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MAR 27 2008

| | |
|---|---|
| THOMIS NORRIS          ) | |
|                       ) | |
| Plaintiff,           ) | Case No. 07 C 6776 |
|                       ) | |
|                       ) | Judge Guzman |
| vs.                   ) | |
|                       ) | Magistrate Judge Ashman |
| CITY OF CHICAGO,      ) | |
| a municipality,       ) | |
|        Defendant.     ) | |

### NOTICE OF FILING

Please Take Notice that I have filed this day with the Clerk of the United States

District Court for the Northern District of Illinois, Eastern Division, **Plaintiff's First**

**Amended Complaint at Law**, a copy of which is attached hereto and herewith served

upon you.


Dated at Chicago, Illinois this 27th Day of March 2008

By _____ Martin M. Stack


100 West Monroe
Suite 1612
Chicago IL 60603
312-372-5695

### Certificate of Service

I hereby certify that I have caused this Plaintiff's First Amended Complaint to be served
upon the Defendant by depositing a copy of Said filing in the United States Post Office, at
Chicago, Illinois this 27th day of March, 2008

_____

Martin M. Stack

1



MAR 27 2008

F I L E D

MAR 2`7 2008    NF

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS NORRIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 07 -6776 |
| vs. | ) | |
| | ) | Judge Guzman |
| | ) | |
| CITY OF CHICAGO, | ) | Magistrate Judge Ashman |
| a municipality, | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff Thomas Norris (Norris), by and through his attorney, Martin
M. Stack, and complaining of the defendant, City of Chicago states as follows:

### CAUSE OF ACTION

1.    This action is brought pursuant to 42 U.S.C. sec. 1983, the U.S. Constitution, the
Laws of the State of Illinois and the Illinois Constitution et seq. to redress the deprivation
under the color of law of the Plaintiff's rights as secured by the Constitution of the
United States.

2.    This cause is also brought pursuant to the fact that the City of Chicago was a
signatory to the Shakman Decree as a result of the case Shakman v. Democratic
Organization of Cook County, et al. case # 69 C 2145.

3.   As a result of egregious misconduct by the City of Chicago, employees of the City of Chicago, and specifically Jan Arnold, among others, Plaintiff, Thomas Norris was wrongfully denied his liberty, denied his promotional opportunities and other emollients of employment.

4.   As a further result of the egregious misconduct by the Defendant, Plaintiff Thomas Norris was permanently and severely injured.

## JURISDICTION and VENUE

5.   This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. sections 1331 and 1343 et seq.; the Constitution of the United States; and supplemental jurisdiction as codified in 28 U.S.C. section 1367(a).

6.   Venue is proper pursuant to 28 U.S.C. sec. 1391(b). All parties reside in the judicial district, and the events giving rise to the claims asserted herein occurred within the district.

## PARTIES

7.   7. At all relevant times the Plaintiff, Thomas Norris, ("Norris") is and was a resident of Cook County, State of Illinois and is employed by Defendant City of Chicago as a Safety Specialist III.  Norris is a registered voter.

8.   At all relevant times, Defendant City of Chicago is a municipal corporation organized under the laws of the State of Illinois.

9.     At all relevant times relevant, Jan Arnold was employed by the City of Chicago as Chief Administrative Officer for the Department of Aviation and served in a policy making capacity.

## FACTS

**Norris**

10. Norris possesses extraordinary knowledge regarding work place safety issues. Norris gained this knowledge beginning with his military service in the early 1980's within the United States Army as a member of the highly regarded 101st Air Borne Regiment. Norris was given special military clearance to guard and maintain the security, integrity and safety of nuclear missile bases throughout the free world.

11.     Norris continued to educate himself regarding work place safety issues by attending regular classes, Occupational Safety and Health Administration (OSHA) provided classes and attended seminars.

12.     Norris has trained virtually every safety officer in the Department of Aviation as well as safety officers in other City of Chicago Departments on safety related issues regarding the work place.  Norris has earned various OSHA certificates to instruct safety classes and issue safety certificates.

13.   Norris was the only OSHA approved training instructor employed by the City of Chicago from 1997 until 1999. He was the only OSHA approved training instructor in the Department of Aviation until 2006.

14.   In 1993 Plaintiff Norris applied for the position of Safety Specialist III in the Department of Aviation for the City of Chicago.

15.   Plaintiff maintains that he was not hired in 1993 as at that time he did not have a political sponsor.

16.   From 1993 to 1997, Plaintiff continued to submit applications to the City of Chicago for numerous vacant positions that the City of Chicago publicly posted to be filled.

17.   Sometime in 1997 due to a posting, Plaintiff Norris again applied for Safety Specialist III in the Department of Aviation and again Norris was not sponsored by any political organization.

18.   Despite his lack of association with any Ward organization or democratic organization, Norris was hired by the Defendant City of Chicago in 1997; again this despite not being associated with any regular democratic organization.

19.   From 1997 to 2003 Plaintiff Norris worked as a Safety Specialist III at Midway International Airport.

20.   During the period of his employment between 1997 and 2003 Plaintiff Norris received excellent employment reviews.

21.   In 1997 Norris was directed by his superiors to report to O'Hare International Airport to supervise all Safety Operations.

22.   Norris supervised such safety operations at O'Hare international Airport for several months.

23.   In 2003 the person who the Department of Aviation employed as Safety Director at Midway International Airport left city employment, this left a vacancy for the position of Safety Director.

24.   As a result of that vacancy, the Department of Aviation, in conjunction with the Department of Personnel posted the vacancy and began accepting application from prospective candidates.

**2003 Posting**

25.   In 2003 Plaintiff Norris came to learn that his direct supervisor, the Safety Director at Midway Airport had vacated that position thus affording him an opportunity to advance.

26.   Norris gathered information regarding the vacancy for Safety Director. As he had previous experience guarding Nike missile bases in Europe as a member of 101st Airborne Division in the United States Army, as well as the experience he gained through city and other employment and through the classes he attended, Norris applied for the position of Safety Director.

27.   At that time in 2003, with the Safety Director's job still vacant, Norris was instructed by his superiors to undertake the responsibilities and duties of the Director's position. The Deputy Commissioner of Safety, Department of Aviation was among those in authority at the Department of Aviation who told Norris to perform his job and that of Safety Director.

28.   Norris performed all the job responsibilities within his job classification as Safety Specialist III as well as those in the Safety Director's job classification, in essence and in fact Norris was doing work enumerated and categorized in two job classifications for the Department of Aviation.

29.   On information and belief, the decision to hire the Safety Director in 2003 rested with a Mr. John Townsend, a retired and formerly high-ranking Deputy with the Chicago Police Department. Townsend was a lifelong resident of the 11th Ward. (Now deceased)

30.   At that time, Plaintiff Norris was one of two individuals who were found to be qualified for the subject position. The other individual was Mark McInerny, a Department of Aviation police officer with no previous safety experience. Mr. Mc Inerny like Mr. Townsend was a life long resident of the 11th Ward.

31.   Mr. Townsend made inquiries regarding the position and openly stated that he favored Mark McInerny. Mr. Townsend was told by at least one other Department of Aviation employee that Mr. McInerny was not as qualified as Plaintiff Norris. Thereafter, Mr. Townsend related to at least two Department of Aviation employees that he would not hire Norris and that he would not hire anyone if he had to hire Norris.

6

32.     As a result, neither candidate was hired and Plaintiff Norris continued to cover the duties of the Safety Director while performing his own duties as Safety Specialist III.

33.     Sometime between 2005 and 2006 Norris was allegedly given the title of "Acting" Safety Director.

34.     Norris never received any written document authorizing him to serve in that capacity from either the Department of Aviation or from the Commissioner of the Department of Personnel. In fact, Norris now understands that the title of "acting" was given to him without authorization by the Commissioner of Personnel as required in Rule III Section 4(3) then in effect at the time.

### 2005 Posting

35.     In 2005 the opening for Safety Director was posted again. Norris was the only name appearing upon the qualified list as Mr. McInerny had been recently promoted from Sergeant to Lieutenant with the Department of Aviation Police.

36.     Norris was informed by his superiors that since he was the only name appearing on the list, the Department of Human Resources would not hire him.

### Shakman Monitor

37.     On July 26, 2005 the Plaintiffs in Shakman filed an Application to Hold the City of Chicago and its Mayor in Civil Contempt for Violations of the Court Orders.

38.   In response to the Shakman Motion, United States District Judge Wayne Anderson issued an Order Appointing a Court Monitor and Counsel on August 2, 2005.

**2006 Posting**

39.   In July of 2006, the opening for the position of Safety Director was posted by the Department of Aviation and Norris again submitted his qualifications for consideration for that position. He did so on-line through the City of Chicago's web page on July 27, 2006. Norris also sent his qualifications with return receipt postage on July 29, 2006.

40.   At or about the time the opening for Safety Director was posted, a Mr. William Lonergan, Plaintiff's supervisor,  told Plaintiff Norris to "forget" about applying as he would not be elevated to the position of Safety Director. According to Mr. Lonergan, Norris did not have the right people behind his efforts to be so employed.

41.   During a phone conversation over the weekend of August 18, 2006 regarding Department of Aviation business, Mr. Mark McInerny informed Norris that he had been furnished a list of individuals released by the City of Chicago's Department of Personnel who were to be interviewed for the position of Safety Director at Midway International Airport.

8

42.   During that telephone conversation, Mr. McInerny informed Norris that Norris'
name did not appear on the list and therefore he would not be given an interview.

43.   On August 20, 2006, Norris confronted his superior Mr. Lonergan regarding the
fact that Norris' name did not appear on the list of qualified candidates.

44.   Lonergan informed Norris that he would look into the matter but he instructed
Norris not to tell Jan Arnold, the Chief Administrative Officer for the Department of
Aviation, that Lonergan was helping Norris as Lonergan may "get in trouble" with Jan
Arnold.

45.   On August 22, 2006 Norris called the Shakman Decree Hiring Monitor's office to
complain about the fact that his name was not on the list of qualified candidates for the
position of Safety Director. Norris also called the Office of the Inspector General to
complain.

46.   Sometime subsequent to his calls to the Inspector General's Office and the Office
of the Shakman Decree Monitor, Mr. Lonergan called Norris and informed him that he
asked Jan Arnold about Norris' name not appearing on the list.

47.   Lonergan informed Norris that Jan Arnold told  Lonergan that the names appearing
on the qualified list were pulled as a consequence of a 'lottery system" and that Norris
was not lucky enough to have been pulled.

48.   Norris filed a complaint with the Shakman Decree Monitor he was subsequently
interviewed by a Mr. William Rimkus, a representative with the Office of the Shakman
Monitor.

9

49.    On August 28, 2006, Mr. William Rimkus called Norris and explained that he reviewed the file and that Norris was qualified. Rimkus also explained that the file had been marked in such a way to show that Norris did not have any safety experience or any supervisory experience.

50.    William Rimkus also informed Norris that he was not only qualified for the position but that he was or should have been the leading candidate for the position of Safety Director.

51.    Thereafter, Norris received a call from William Lonergan who told Norris to drop the entire matter as he did not want to see Norris "disappointed".

52.    On September 7, 2006 Norris received a call from Maribeth Anderson, Mr. Lonergan's assistant, who explained to Norris that something was wrong as his name did not appear on the list of candidates to be interviewed for Safety Director at Midway Airport. Ms Anderson, knowing that Plaintiff Norris had been on the list in previous years, arranged for Plaintiff Norris to be placed on the list. She also told Norris that the list contained the name of a person who had been terminated by the Department of Aviation.

53.    After the complaining to the Office of the Shakman Monitor, Norris received a letter, post marked September 19, 2006, from Ms. Jan Arnold, Chief Administrative Officer, Department of Aviation. The letter explained that Norris had been selected as a candidate for the position of Safety Director. The letter also stated that if he was interested in an interview that he should contact a Patricia Linton no later than

September 18, 2006. Norris received this letter (postmarked September 19, 2006)

sometime after September 20, 2006.

54.   Ms. Arnold was in a policy making position within the Department of Aviation.

55.   Jan Arnold deliberately delayed mailing notice of interviews to Norris so as to

thwart his chances of being interviewed in 2006.

56.   Prior to this incident, Plaintiff Norris had been confronted by Arnold on numerous

occasions. She referred to him as a "Neanderthal." In statements to other Department of

Aviation employees she openly denigrated his work and on numerous occasions refused

to speak to him regarding safety issues at Midway Airport.

57.   Regardless, Norris submitted his name and qualifications to be considered for

Safety Director. Despite Arnold's attempt to obstruct Norris right to be interviewed for

the position of Safety Director, Norris subsequently received an interview.

58.   Thereafter on information and belief Norris was evaluated to be suitable for the

position of Safety Director and in fact, on information and belief, was the leading

candidate among the field of otherwise qualified candidates.

59.   Thereafter, Norris was given unofficial information by his superiors that he was not

going to be selected as the Safety Director. Norris also learned that the City of Chicago

was going to "throw out" the list upon which he ranked as most qualified for the Safety

Director's position

**2007 Posting**

11

60.   In September of 2007, after the May 31, 2007 Shakman Accord deadline, Norris came to learn that the Department of Aviation had again conducted interviews for the position of Safety Director and also came to learn that he was not on the list to be interviewed for this position as he had been in the past.

61.   Norris came to learn that one of the favored candidates was a Patrick Tagler, or PatrickTaggart a resident or former resident of the 11th ward.  Norris was told this by another Department of Aviation employee, a Mr. John Malabarbra also from the 11th Ward.

62.   Upon learning of Mr. Taggart's position as favored candidate, Norris wrote Taggart's name on a piece of paper and mailed the paper to his house registered by way of mail.  The envelope remains unopened with the appropriate U. S. Post Office registered markings upon it.

63.   Norris also came to know that the representative from the Shakman Monitor's office, Mr. William Rimkus, was under the false belief that Norris had been hired as Safety Director as Rimkus inquired of Department of Aviation officials as to the whereabouts of the person hired the year before, referring to Norris.

64.   Norris again complained to the office of the Shakman Monitor and the Inspector General's Office.

65.   On information and belief the Shakman Monitor will not give approval to the City of Chicago to promote any one employee serving in a provisional appointment ("Acting") capacity as they would have an unfair advantage to gain a promotion into the position for which they are currently serving as Acting.

**Municipal Code**

66.   The Chicago Municipal Code states, in relevant part, at 2-74-050 (4) that     For the establishment of eligible lists for appointment and promotion in career service, upon which lists shall be placed the names of successful candidates in order of their relative excellence in the respective examinations. The commissioner may substitute rankings such as excellent, well qualified and qualified for numerical ratings and establish eligible lists accordingly. Such rules may provide for lists by area or location, by department or other agency, for removal of those not available for or refusing employment, for minimum and maximum duration of such lists, and for such other provisions as may be necessary to provide rapid and satisfactory service to the operating agencies. The rules may authorize removal of eligibles from lists if those eligibles fail to furnish evidence of availability upon forms sent to them by the commissioner;

67.   The Chicago Municipal Code regarding Human resources rules, states, in relevant part, at 2-74-050 (6), that: The rules shall provide: For promotions which shall give appropriate considerations to the applicant's qualifications, record of performance and ability.

68.   The Chicago Municipal Code states, in relevant part, at 2-74-090 (B), that:    No person shall make any false statement, certificate, mark, rating or report with regard to any test, certification or appointment made under any provisions of this ordinance or in any manner commit or attempt to commit any fraud, prevent the impartial execution of this ordinance and any rules issued hereunder.

## COUNT I

### Sec. 1983 Due Process Claims –
### City of Chicago

69.  Norris re-alleges, restates and incorporates by reference paragraphs 1-68 of this
Complaint as paragraphs 1-68 of Count I, as though fully set forth herein.

70.  Defendant and Jan Arnold while acting under the color of law and within the scope
of their employment as a policy maker deprived Plaintiff Norris, of his constitutional
rights to due process.

71.  The defendant through its policy maker deliberately fabricated false statements and
deliberately denied Plaintiff Norris of his due process rights, thereby causing him to be
injured.

72.  The defendant City of Chicago exhibited a pattern of conduct or maintained a
policy evidenced via a series of events that denied Norris his constitutional protections.

73.  In 2003 the position of Safety Director was vacant and Norris was denied an
opportunity to interview for the position as the sitting policy maker designated the job
for a politically favored candidate who was less qualified than Norris.

74.  In 2005 Norris was denied an opportunity in contravention of his due process rights
to interview for the position of Safety Director as he was told that since he was the only
name on the eligibility list the list was invalid.

75.  In 2006 Jan Arnold held the position of policy maker with authority to hire for the
position of Safety Director,

76.  At all times relevant, Jan Arnold acted under color of state law.

14

77. Arnold's statements and actions in 2006 deprived Norris of his liberty without due process of law and violated the Due Process Clause of the Fourteenth Amendment.

78. As Arnold had final decision policymaking authority, the City of Chicago also violated Norris' due process rights.

79. Jan Arnold while in a policy making position with the defendant City of Chicago conducted a defamatory campaign against Norris calling him a Neanderthal and stated to others that Norris had nothing to offer the Department of Aviation by way of experience.

80. On or about September 19th 2006, Jan Arnold acting in her official capacity as Chief Administrative Officer for the Department of Aviation, deliberately delayed mailing an addressed notice to interview to Norris for the position of Safety Director. That notice required a response from Norris no later than September 18, 2006. The notice was post marked September 18, 2006 and Norris received this notice some time after September 19, 2006, therefore making it impossible for Norris to respond in a timely fashion.

81. Norris was denied due process in September of 2007 as he was not considered for the position of Safety Director because his applicant file was marked in such away by Jan Arnold and the City of Chicago to reflect that he had no supervisory or safety experience thereby disqualifying him from the position of Safety Director.

82. As Norris applicant file had been marked in such a way to stigmatize him, his reputation and integrity were called into question without benefit of redress and due process.

15

83.  As a direct cause of the harm inflicted upon his reputation, Norris was not even considered as a candidate to interview for the position of Safety Director in May of 2007.

84.  Norris was not only deprived of his due process rights in 2003, 2005, 2006  and 2007 the defendant City of Chicago has deprived Norris future opportunities to interview as his applicant file still remains marked in such a way to discredit Norris and deny him promotional opportunity.

85.  The defendant City of Chicago has codified the process by which employees are to be given appropriate consideration for  promotional opportunities and has codified punishment by way of fine for any person who would "make any false statement, certificate, mark, rating or report with regard to any test, certification or appointment made under any provisions of this ordinance or in any manner commit or attempt to commit any fraud, prevent the impartial execution of this ordinance;" thus Norris has more than a unilateral expectation of fair and equal treatment under the law.

86.  As the defendant City of Chicago never intended to offer Norris a legitimate opportunity for advancement, the interview process the City of Chicago employed bore no rational relationship to the duties expected of the Safety Director as out lined in the job description for that position..

87.  As a result of the Defendants violating his federal and state constitutional rights and his right to due process, Plaintiff Norris suffered and continues to suffer injuries.


WHEREFORE, the Plaintiff, Thomas Norris, prays for the following relief against The City of Chicago as follows:

16

a.      Promote Norris to the position of Safety Director and
b.      Award him compensatory damages for which he is entitled; and
c.      Prejudgment interest calculated at the prevailing rate; and
d.      Award him attorney's fees and costs pursuant to 42 U.S.C. sec. 1988; and
e.      Grant other such relief as this court deems just and appropriate.

## COUNT II

## SHAKMAN VIOLATIONS

## CITY OF CHICAGO

88.    Norris re-alleges, restates and incorporates by reference paragraphs 1-87 of this
Complaint as paragraphs 1-87 of Count II, as though fully set forth herein.

89.    This is a civil action brought to enforce the mandate of the adjudicated case
Shakman v. Democratic Party of Cook County, No. 69 C 2145 (hereinafter "Shakman
Decree" or "Shakman")

90.    On June 20, 1983 defendant City of Chicago entered into a Consent Judgment
which incorporated the 1972 prohibitions and extended those prohibitions to include the
defendant's hiring practices, with some exclusions which to not apply to Norris.

91.    On July 26, 2005 the Plaintiffs in Shakman filed an Application to Hold the City of
Chicago and its Mayor in Civil Contempt for Violations of the Court Orders.

92.    Shakman Plaintiffs based their Motion, in part, on revelations made public by
criminal indictments (05 CR 644 and (05 CR 646) that the United States of America filed
against former city officials.

17

93.    In response to the Shakman Motion, United States District Judge Wayne Anderson issued an Order Appointing a Court Monitor and Counsel on August 2, 2005.

94.    The aforementioned criminal complaints identified repeated instances of manipulation of the interviewing, selection and hiring processes to ensure preferential hiring and promotions for pre-selected candidates based upon pre-selected considerations, in direct violation of the Shakman Decree.

95.    Norris was directly injured as a consequence of this scheme.

96.    The promotional process for Norris to advance to Director of Safety at Midway Airport was a sham. The promotional process was completely subverted as the City of Chicago was not going to promote Norris on merit but would deny him a promotion on the basis that he was:

(a)That he was not involved in a democratic ward organization; or
(b)That the position was being held from him for a favored person.

97.    The defendant City of Chicago has refused to recognize or act in any reasonable manner upon the claims of Norris as he has brought his complaints to both the Inspector General and the Shakman Hiring Monitor.

98.    After an investigation by the Shakman Monitor, no formal remedy was offered by defendant City of Chicago.

99.    On each occasion Norris applied for the position of Safety Director he was specifically told by employees of the defendant City of Chicago that he was not going to be promoted to the position of Safety Director for the Department of Aviation as other politically favored candidates were also seeking the position. As Norris was better

18

qualified than the other candidates but not favored politically, the defendant City of Chicago chose not to promote any eligible candidates into the position.

100. In 2007, two separate Department of Aviation employees identified to Norris two individuals who would eventually be named to the position of Safety Director as these two individuals were favored politically.

101. One individual was a non-employee and a former resident of the 11th Ward; the other individual is a current employee of the Department of Aviation.

102. Norris wrote the name of each individual on a separate sheet of paper, Norris then placed each sheet of paper containing the favored candidate into separate envelopes, sealed each envelope and sent the sealed envelopes containing each name of the favored candidate to himself via registered United States mail.

103. Both individuals were subsequently named to the position of Safety Director.

104. Both sealed envelopes Norris sent to himself registered mail and containing the individual name of each favored candidate remain unopened and in the custody Norris' attorney(s).

105. On May 31, 2007 the defendant City of Chicago entered into an accord with the Shakman plaintiffs, "Agreed Settlement and Accord" (hereinafter "Accord") seeking to recompense parties injured as a consequence of the defendant violating the Shakman Decree.

106. The defendant City of Chicago during the term of the employment of Norris continuously violated the mandates of the Shakman Decree when it refused to consider Norris as a viable candidate for the position of Safety Director.

107. In violation of Shakman Decree mandates employees of the policy makers

employed by defendant City of Chicago took affirmative steps to block Norris from

interviewing for the position of Safety Director by attempting to name Norris as "Acting

Safety Director "with the knowledge that a person in an "acting" role would not be

considered for the permanent title; this with the intention to position a favored candidate

to be next in line for the position of Safety Director.


108. As Norris is in a class of employees seeking remedy under the Accord, Norris has

standing to bring this action.


109. The Accord provides, in relevant part, that: Any class member who alleges a

violation of the 1972 or 1983 Shakman consent decrees occurring prior to January 1,

2000, is not provided relief by this accord, but may opt out of the Accord and assert

whatever rights she or he may have regarding any such claim by submitting a written

Opt-Out Request to the SDM (Shakman Decree Monitor)


110. The Accord also provides, in relevant part, that, Any Class Member who alleges a

violation of the 1972 or 1983 Shakman consent decrees arising between January 1, 2000

and the final approval date of the Accord may elect not to participate in the Claims

procedure detailed herein by submitting an Opt-out request to the SDM received on or

before the Opt-Out date.

111. Attached hereto is Norris opt out form thus allowing him to bring this action.

WHEREFORE the Plaintiff, Thomas Norris, prays for the following relief against The

City of Chicago and the Department of Aviation as follows:

a.         Promote Norris to the position of Safety Director and
b.         Award him compensatory damages for which he is entitled; and
c.         Prejudgment interest calculated at the prevailing rate;
d.         Award him attorney's fees and costs.
e.         Grant limited to an exemplary other such relief as this court deems just and
             appropriate including but not limited to an exemplary award or order.

## COUNT III

### Whistle-Blower Act – State Law Claim

112. Plaintiff's re-allege, restate and incorporate by reference, all the above paragraphs

for paragraphs 1-111 of Count III of this complaint at Law.

113. 740 ILCS 174/15(b) provides, in relevant part that:

An employer may not retaliate against an employee for disclosing information to a
government or law enforcement agency, where the employee has reasonable cause to
believe that the information discloses a violation of a State or federal law, rule, or
regulation.
If an employer takes any action against an employee in violation of Section 15 or
20, the employee may bring a civil action against the employer for all relief necessary
to make the employee whole, including but not limited to the following, as appropriate:
(a)Reinstate with the same seniority status that the employee would have had, but for
the violation;
(b) back pay with interest;
(c) compensation for any damages sustained as a result of the violation including any
litigation costs, expert witness fees and reasonable attorney's fees.

114.    Plaintiff Norris sought help and aid from the Office of the Shakman Decree
Monitor on August 24, 2006. In so doing, Plaintiff Norris complained to an
investigative agency charged with the responsibility to monitor political hiring at the
City of Chicago.

115.    As such the Shakman Monitor meets the statutory criteria as an outside
agency.

116.    As a result of his complaints, Plaintiff Norris was contacted by Noelle
Brennan  in writing on September 6, 2006. He was also interviewed by William
Rimkus, a representative/employee of the Shakman Decree Monitor..

117.    In further retaliation over the Plaintiff's act of complaining to the Shakman
Decree Monitor, Defendant City of Chicago intentionally refused to interview the
Plaintiff Norris in September of 2007 for a position for which he is exceptionally
qualified, that of Safety Director, Midway Airport.

**WHEREFORE**, the Plaintiff, Thomas Norris, prays for the following relief against
Defendant Arnold and Defendant City of Chicago:

a.      Promote Norris to the position of Safety Director;
b.      Award him compensatory damages for which he is entitled; and
c.      Award him damages for injuries; and
d.      Prejudgment interest calculated at the prevailing rate; and
e.      Award him attorney's fees and costs pursuant to740 ILCS 30; and

f.        Grant other such relief as this court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to federal rule of Civil Procedure

38(b) on all issues so triable.

Respectfully Filed

Martin M. Stack

Martin M. Stack
100 West Monroe
Suite 1612
Chicago IL 60603
312-372-5695

ACCORD FORM 4

# ACCORD COMPLAINT FORM

## AGREED SETTLEMENT ORDER AND ACCORD ("ACCORD")
### Entered in *Shakman, et al. v. Democratic Organization of Cook County, et al.*
### (the "Shakman Case")

Date: _September 26, 2007_

To:   City of Chicago Inspector General's Office
      P.O. Box 2996
      Chicago, Illinois 60654-2996

I _Thomas Torres_ , hereby declare, under penalty of
perjury pursuant to the laws of the United States, as follows:

1. **Address:** _6463 SOLONG_
   _CHICAGO, IL._
   _60658_

2. **Telephone:** _773 581-0070_

3. **Date(s) of Violation(s):** _Continuing though and after 5-31-07_

4. **City Department or Agency Involved:**
   _AVIATION_