IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS NORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 6776 |
| | ) | |
| vs. | ) | Judge Guzman |
| | ) | Magistrate Judge Ashman |
| CITY OF CHICAGO, a municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
### TO DISMISS PLAINTIFF'S FIRST COMPLAINT

Defendants City of Chicago (the "City") through their attorney Mara S. Georges, Corporation Counsel of the City, pursuant to Federal Rule of Civil Procedure 12(b)(6), submit the following memorandum in support of their motion to dismiss the plaintiff's first amended complaint.

### BACKGROUND

The plaintiff, Thomas Norris ("Norris"), is a Safety Specialist III employed by the City's Department of Aviation (the "Department"). In December 2007, he filed a seven-count complaint against the City, Jan Arnold ("Arnold"), and the City's Department of Aviation, alleging various federal and state law violations. The City and Arnold moved to dismiss the complaint in its entirety. Norris now brings a three-count amended complaint naming the City as the sole defendant. The crux of Norris's complaint is that the defendants violated federal and state laws by failing to promote him to the position of Safety Director at the City's Midway Airport. See generally First Amended Complaint at Law at ¶¶ 10-65 [hereafter "Complaint"]. Count I alleges deprivation of due process in violation of 42 U.S.C. § 1983, Complaint at ¶¶ 69-87; Count II alleges violations of the Shakman Decree, see id. at ¶¶ 88-111; and Count III alleges retaliation in violation of the Illinois Whistleblower Act, id. at ¶¶ 112-117.[1]

---

[1] For the court's convenience, a copy of the Complaint is attached as Exhibit A.

**ARGUMENT**

A motion to dismiss should be granted if the complaint fails to state a claim that entitles plaintiff to relief.  Corcoran v. Chicago Park Dist., 875 F.2d 609, 611 (7th Cir. 1989).  In order to state a claim, a plaintiff must allege facts that plausibly suggest that he is entitled to relief.  See Bell Atlantic Corp. v. Twombly, ---- U.S. —, 127 S. Ct. 155, 1965 (2007).  To allege plausible grounds for relief, the complaint must allow a "reasonable expectation" that discovery will reveal evidence of illegality.  Id..  When considering a Rule 12(b)(6) motion, the court must assume all well-pleaded allegations in the complaint are true and must construe them in a light most favorable to the plaintiff.  Alexander v. City of Chicago, 994 F.2d 333, 335 (7th Cir. 1993).  The court is not, however, "obliged to accept as true legal conclusions or unsupported conclusions of fact."  Hickey v. O'Bannon, 287 F.3d 656, 658 (7th Cir. 2002).  Moreover, the court is not required to "ignore any facts set forth in the complaint that undermine the plaintiff's claim."  LeBlang Motors, Ltd. v. Subaru of Am., Inc., 148 F.3d 680, 690 (7th Cir. 1998) (citations omitted).  Where the complaint, on its face, plainly reveals that an action is time barred under the applicable statute of limitations, a dismissal under Rule 12(b)(6) is appropriate.  See, e.g., Hollander v. Brown, 457 F.3d 688, 691 n. 1 (7th Cir. 2006) (dismissal appropriate when plaintiff effectively pled herself out of court by alleging facts sufficient to establish a limitations defense); United States v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005) (dismissal proper where complaint "plainly reveals that an action is untimely under the governing statute of limitations"); Small v. Chao, 398 F.3d 894, 898 (7th Cir. 2005) (court may dismiss under Rule 12(b)(6) a complaint that is indisputably time barred).

Under this standard, Norris's complaint should be dismissed in its entirety pursuant to Rule 12(b)(6).  Norris's section 1983 and Illinois Whistleblower Act claims do not state claims upon which relief can be granted.  Norris's Shakman claim is untimely.  We address each point below.

**I.    THE COURT SHOULD DISMISS NORRIS'S DUE PROCESS CLAIM**

In Count I, Norris asserts that he was deprived of his rights to due process.  See Complaint at ¶¶ 70, 81.  According to Norris, he "was denied an opportunity in contravention of his due process rights to interview for the position of Safety Director . . . ."  Id. at ¶ 74.  He complains of deprivation of a liberty interest, id. at ¶¶ 77-82, as well as a property interest in

2

"promotional opportunities," id. at ¶ 85.

Norris's due process claims have no merit. The Due Process Clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to assert a violation of due process, "a plaintiff must be able to show that 1) he or she had a 'property interest' and 2) that he or she was deprived of this interest without due process of law." Phelan v. City of Chicago, 347 F.3d 679, 681 (7th Cir. 2003) (citing Bishop v. Wood, 426 U.S. 341, 343 (1976)). Accord, e.g., Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982); Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996). Norris's due process claims rest on his misguided belief that he has a right to be promoted to Safety Director and a liberty interest in his reputation. He has neither. Thus, he cannot even meet the threshold requirement for asserting a due process claim. Moreover, even if Norris could show the existence of a property or liberty interest, he would not prevail because he cannot show any deprivation without due process of the law. Nor can he show a basis for municipal liability.

  **A.** **Norris Does Not Have A Property Interest In Promotion.**

Property interests are not created by the Constitution itself. See, e.g., Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538 (1985). "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). In particular, a litigant must identify "rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." Perry v. Sindermann, 408 U.S. 593, 601 (1972). The Seventh Circuit has made clear that "a property interest is not constitutionally cognizable unless a person has a legitimate claim of entitlement to the benefit," and a "unilateral expectation of the benefit" simply will not suffice to create a property interest. Buttitta v. City of Chicago, 9 F.3d 1198, 1202 (1993) (internal quotation marks and citation omitted). Accord, e.g., Bigby v. City of Chicago, 766 F.2d 1053, 1056-57 (7th Cir. 1985), cert. denied, 474 U.S. 1056 (1986).

Consistent with this principle, a number of cases hold that there is no property interest in a promotion. See, e.g., United States v. City of Chicago, 869 F.2d 1033, 1036-39 (7th Cir. 1989) (no property interest in promotion because Illinois law does not create such an entitlement);

Thomas v. Board of Examiners, 866 F.2d 225, 227 (7th Cir. 1989) (per curiam) ("Thomas clearly has no property entitlement to the promotion"); Bigby, 766 F.2d at 1057 (police sergeants have no property interest in being promoted to lieutenants). As the court in Bigby explained:

> Promotion to lieutenant's rank is not a matter of right and is not governed by fixed rules which if complied with automatically entitle the applicant to promotion. "To have a property interest . . . a person . . . must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

766 F.3d at 1057 (quoting Roth, 408 U.S. at 577) (ellipses and emphasis in original).

Norris attempts to create a property interest in promotion by pointing to provisions in the Municipal Code of Chicago ("Code"). See Complaint at ¶ 85 (asserting that Norris "has more than a unilateral expectation" because the City has "codified the process by which employees are to be given appropriate consideration for promotional opportunities"). See also id. at ¶¶ 66-68 (describing provisions of various provisions of the Code). Nothing in these provisions of the Code, however, provide Norris with a legitimate claim of entitlement to a promotion to the Safety Director position. At most, even under Norris's own interpretations, the Code provides a procedure for handling promotions for City employees. See id. It does not entitle him to bring a due process claim in federal court. Cf. River Park, Inc. v. City of Highland Park, 23 F.3d 164, 165 (7th Cir. 1994) ("[l]itigants who neglect or disdain their state remedies are out of court, period"). See also Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir.2003) (explaining that § 1983 provides a remedy for constitutional violation, not violations of state statutes and regulations); Archie v. City of Racine, 847 F.2d 1211, 1216-17 (7th Cir.1988) (explaining that violation of state law does not give rise to actionable § 1983 claim unless it independently violates the Constitution or federal law).

In sum, Norris has no property interest in a promotion.

### B. Norris Does Not Have A Liberty Interest In His Reputation.

Reputation is not "property" or "liberty" within the meaning of the due process clause. See, e.g., Paul v. Davis, 424 U.S. 693, 711-12 (1976); Flynn v. Sandahl, 58 F.3d 283, 289 (7th Cir. 1995); Colaizzi v. Walker, 812 F.2d 304, 307 (7th Cir. 1987). And while there exists a claim based on deprivation of a liberty interest in post-employment reputation, see Olivieri v. City of Chicago, 122 F.3d 406, 408 (7th Cir. 1997), Norris does not allege such a claim. Indeed, he would be hard pressed to make a claim based on post-employment reputation given that he is

4

still employed by the City as a Safety Specialist III.  See Complaint at ¶ 2.

In order to assert a deprivation of liberty interest in post-employment reputation, a plaintiff must show that "(1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed, and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure."  Johnson v. Martin, 943 F.2d 15, 16 (7th Cir. 1991).  Accord Harris v. City of Auburn, 27 F.3d 1284, 1286 (7th Cir. 1994); McMath v. City of Gary, 976 F.2d 1026, 1031 (7th Cir. 1992).  In this case, although Norris alleges that he was stigmatized, see Complaint at ¶ 81, he does not allege that the allegedly stigmatizing information was publicly disclosed or that he was unable to procure other employment opportunities as a result of the allegedly stigmatizing information.  In other words, the facts in Norris's complaint do not reach the threshold necessary to implicate a liberty interest.

### C. Norris Has Failed To Allege A Denial Of Procedural Or Substantive Due Process.

In any event, even if Norris were able to show that he was deprived of a property or liberty interest (which he cannot do), his due process claim would fail because he cannot show that he was deprived without due process.  In procedural due process claims, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law."  Zinermon v. Burch, 494 U.S. 113, 125 (1990) (emphasis in original).  Accord, e.g., Wallace v. Tilley, 41 F.3d 296, 299 (7th Cir. 1994).  Thus, even when there is a deprivation of property, there is no violation of procedural due process actionable under Section 1983 unless and until the government fails to provide the due process.  See Burch, 494 U.S. at 126. "Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the [government] provided, and whether it was constitutionally adequate."  Id.

A long line of cases has firmly settled that deprivations of property resulting from "random and unauthorized" acts of state employees do not constitute a violation of the procedural requirements of the Fourteenth Amendment as long as meaningful postdeprivation remedy is available.  Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527, 541 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986); New Burnham Prairie Homes v. Village of Burnham, 910 F.2d 1474, 1480 (7th Cir. 1990).  To hold otherwise,

"would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." Parratt, 451 U.S. at 544 (citations and quotation marks omitted).

In this case, Norris's allegations show that the deprivation he complains of occurred, if at all, as the result of "random and unauthorized" acts. In fact, he claims that it was the result of City officials "deliberately fabricat[ing] false statements." Complaint at ¶ 71. Norris was entitled only to postdeprivation remedies for such random and unauthorized acts. State law provides adequate postdeprivation remedy for such acts and thus provided Norris all the process that was due.

To the extent Norris is claiming denial of substantive due process, his claim also fails. The United States Supreme Court has made clear that substantive due process is a narrow concept. Only when governmental action is utterly unrelated to any legitimate governmental interest can it be condemned as a violation of substantive due process; it must be "arbitrary, or conscience-shocking, in a constitutional sense." Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992). Accord National Paint & Coatings Association v. City of Chicago, 45 F.3d 1124, 1129 (7th Cir.) ("laws supported by a rational basis are within the power of the elected branches of government," and only those that affect "fundamental rights" come within the purview of substantive due process), cert. denied, 515 U.S. 1143 (1995). To ensure that substantive due process adheres to its modest confines, the Seventh Circuit has held that complaints about the deprivation of a state-created property interest are actionable as a denial of substantive due process only if the plaintiff can show: (1) that the government's decision was arbitrary and irrational, and (2) that an additional constitutional violation occurred or that available state remedies were inadequate. See, e.g., Doherty, 75 F.3d at 325.

In this case, Norris's allegation that he was denied promotion surely cannot be characterized as arbitrary or conscious-shocking in the constitutional sense. Moreover, Norris has failed to allege inadequacy of available state remedies or that he has any additional constitutional claims.

      **D.**    **Norris Has Failed To Allege A Municipal Policy, Practice, Or Custom.**

Norris's section 1983 claim against the City fails for another, equally compelling reason. In order to hold a municipality liable under section 1983, a plaintiff must show that a municipal

6

policy, practice, or custom caused a violation of his constitutional rights. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). Even then, a municipality is liable only when "deliberate action attributable to the municipality directly caused a deprivation of federal rights," Board of County Commissioners v. Brown, 520 U.S. 397, 415 (1997) (emphasis in original), and the official policy is the "moving force of the constitutional violation," Monell, 436 U.S. at 694. Thus, the threshold question is "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989).

A plaintiff may show municipal policy in three ways: (1) "an express policy that, when enforced, causes a constitutional deprivation"; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law"; and (3) when "the constitutional injury was caused by a person with final policymaking authority." Abbott v. Village of Winthrop Harbor, 205 F.3d 976, 981 (7th Cir. 2000) (citation and internal quotation marks omitted).

In this case, Norris does not allege that the City has an express policy or a widespread practice of failing to promote people for unlawful reasons. Indeed, he would be hard pressed to do so because there clearly is no such policy or practice. Norris's allegation that the City "exhibited a pattern of conduct or maintained a policy evidenced via a series of events that denied Norris his constitutional protections," Complaint at ¶ 72, is not sufficient to show that the City had a widespread, permanent, and well-settled practice of failing to promote people for unlawful purposes. At worst, that allegation shows that the manner in which Norris's promotion application was handled was flawed. In an attempt to allege a policy via the third method – by identifying a person with final policymaking authority – Norris points to Arnold as such a person. See id. at ¶¶ 78-79. But the question whether an official is vested with final policymaking authority is governed by applicable state law. See, e.g., McMillian v. Monroe County, 520 U.S. 781, 786 (1997). And under state and local law, the City Council is the body authorized "to establish employment policy with regard to City personnel." Auriemma v. City of Chicago, 747 F. Supp. 465, 470 (N.D. Ill. 1990), aff'd, 957 F.2d 397 (7th Cir.1992). Thus, even if denial of promotion to Norris were unlawful, he has not shown that the decision was made by a final policymaker. Accordingly, his section 1983 claims against the City must be dismissed for this

7

reason as well.

**II.    THE COURT SHOULD DISMISS NORRIS'S CLAIM UNDER THE WHISTLEBLOWER ACT**.

In Count III of the Complaint, Norris alleges that the City retaliated against him in violation of the Illinois Whistleblower Act ("Act"). Norris claims that the City retaliated against him in violation of the Act by intentionally refusing to interview him "in September 2007 for a position for which he is exceptionally qualified." Complaint at ¶ 117. The Act expressly prohibits "employers" from retaliating against employees. The relevant provision provides

> An <u>employer</u> may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

740 ILCS 174/15 (2004) (emphasis added).

 As an initial matter, Norris's own allegations show that his claim that he was denied an interview in 2007 is without a factual basis. In another part of his complaint, Norris concedes that sometime after he was denied an interview in 2006, he did, in fact, "receive[] an interview." Complaint at ¶ 57. This discrepancy is fatal to Norris's claim under the Act.

Beyond that, Norris claim fails because the Act does not apply to the City. Section 15 of the Act prohibits only an "employer" from retaliating against employees. Section 5 of the statute provides a specific definition of an "employer:"

> As used in this Act:
> "Employer" means: an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State, <u>except that "employer" does not include any governmental entity</u>.

740 ILCS 174/5 (2004) (emphasis added). It is evident from this definition that the City is not an employer within the meaning of the Whistleblower Act. Thus, Norris's claims under the Act against the City should be dismissed as a matter of law.

**III.    THE COURT SHOULD DISMISS NORRIS'S SHAKMAN CLAIM**.

Count II of the Complaint alleges violations of the <u>Shakman</u> Decree. Described in very general terms, the Shakman Decree, entered in 1972 and modified several times since, prohibits the City from basing its employment decisions for civil servants on political considerations. See generally <u>O'Sullivan v. City of Chicago</u>, 396 F.3d 843, 847-50 (7th Cir. 2005).

8

Norris claims that the City "continuously violated the mandates of the Shakman Decree when it refused to consider Norris as a viable candidate for the position of Safety Director." Complaint at ¶ 106. According to Norris, he applied for the position of Safety Director in 2003, id. at ¶ 26, and learned that he would be denied the position, id. at ¶ 29. In 2005, he again learned that he would not be promoted to that position. Id. at ¶ 35. He again applied for the Safety Director position in July 2006. Id. at ¶ 39. Thereafter, he learned that the City "was going to 'throw out' the list upon which he ranked as most qualified" for the position. Id. at ¶ 59. Norris also alleges that in September 2007, he learned that the City had conducted interviews for the position of Safety Director and that he was not on the list to be interviewed for this position as he had been in the past. Id. at ¶ 60. Norris claims that on each occasion he applied for the position of Safety Director, "he was specifically told by employees of [the City] that he was not going to be promoted" because "other politically favored candidates were also seeking the position." Id. at ¶ 99.

Norris's Shakman claim is barred by the statute of limitations. The Seventh Circuit has made clear that Shakman claims must be filed within 180 days after the cause of action accrues. See Smith v. City of Chicago, 769 F.2d 408, 413 (7th Cir. 1985). The Supreme Court has made abundantly clear that a discrete act of discrimination or retaliation accrues when the act takes place. See National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 110 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"). The Court has made equally clear that discrete acts include failure to promote. See id. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.") (emphasis added). Accord, e.g., Roney v. Illinois Department of Transportation, 474 F.3d 455, 460 (7th Cir. 2007).

In this case, Norris's own allegations reveal that the last time he applied for the Safety Director position was in July 2006, see Complaint at ¶ 39, and that after that application, he learned that the City "was going to 'throw out' the list upon which he ranked as most qualified" for the position, id. at ¶ 59. Thus, it should have come as no surprise to Norris when he learned that in 2007 he was not on the list of candidates to be interviewed for the Safety Director

9

position.[2]  In other words, Norris clearly knew at some point in 2006 that he was not going to be promoted to the position he sought, and his Shakman claim arose at that time.

To the extent that Norris is attempting to allege a continuing violation by the City, he cannot do so under these facts.  The "continuing violation doctrine" applies only to claims of hostile work environment where the unlawful character of individual acts is not immediately apparent.  See, e.g., Morgan, 536 U.S. at 114-15; West v. Ortho-McNeil Pharm. Corp., 405 F.3d 578, 581 (7th Cir. 2005); Stepney v. Naperville School District 203, 392 F.3d 236, 239-40 (7th Cir. 2004). The denial of a promotion is a discrete act, and Norris's cause of action based on that denial accrued in 2006, the last time he was told he would not be promoted. Yet, Norris did not file his Shakman claim until March 27, 2008, well after the applicable 180-day statute of limitations had run.  Accordingly, his Shakman claim should be dismissed as untimely.

---

[2] Although Norris alleges that in September 2007, he was not on the list of candidates to be interviewed for the Safety Director position, Complaint at ¶ 60, he does not allege that he applied in 2007 for that position.

## CONCLUSION

For the reasons stated above, Defendants City of Chicago respectfully requests that the court grant its motion and dismiss Norris's complaint with prejudice in its entirety.

                                Respectfully submitted,

                                MARA S. GEORGES
                                Corporation Counsel
                                of the City of Chicago

                     BY:  s/ Meera Werth
                                MEERA WERTH
                                Assistant Corporation Counsel

30 North LaSalle Street           JAY KERTEZ
Room 1020                              Senior Counsel
Chicago, Illinois  60602
312-742-7035/744-9212

## CERTIFICATE OF SERVICE

_____

      I certify that on May 16, 2008, I served a true and correct copy of the Defendant's Motion to Dismiss the Plaintiff's First Amended Complaint, together with the supporting documents via electronic filing on the person named below.

s/Meera Werth
Meera Werth

Person served:

Martin M. Stack
100 West Monroe
Suite 1612
Chicago, Illinois 60603