IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JUN 1 1 2008
Jun 11, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| THOMIS NORRIS | ) |
| Plaintiff, | ) |
| | ) Case No. 07 C 6776 |
| | ) |
| | ) Judge Guzman |
| vs. | ) |
| | ) Magistrate Judge Ashman |
| CITY OF CHICAGO, | ) |
| a municipality, | ) |
| Defendant. | ) |

## NOTICE OF FILING

Please Take Notice that I have filed this day with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **Plaintiff's Memorandum In Opposition of Defendant's Motion To Dismiss**, a copy of which is attached hereto and herewith served upon you.

Dated at Chicago, Illinois this 11th Day of June 2008

By _____ Martin M. Stack

100 West Monroe
Suite 1612
Chicago IL 60603
312-372-5695

## Certificate of Service

I hereby certify that I have caused this Plaintiff's Memorandum In Opposition of Defendant's Motion To Dismiss to be served upon the Defendant by delivering a copy of Said filing via the United States Post Office, this 11th day of June, 2008

_____
Martin M. Stack

1

```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION
```

FILED
JUN 1 1 2008
Jun 11, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| THOMIS NORRIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 C 6776 |
| | ) | |
| | ) | Judge Guzman |
| vs. | ) | |
| | ) | Magistrate Judge Ashman |
| CITY OF CHICAGO, | ) | |
| a municipality, | ) | |
| Defendant. | ) | |

1

## I. A. SUMMARY OF FACTS

Plaintiff ["Norris"] is a veteran with years of experience in military and airport security. In 1997, Norris was hired to work security for the Department of Aviation ["DOA"]. In 2003, after years of excellent reviews, he applied for a recently-vacated security director position. From 2003 to 2006, Norris was either the top-rated or only, qualified candidate for the open Security Director positions that were properly posted. After the position was vacated the Deputy Commissioner of Aviation for Safety ordered Norris to assume these duties by the DOA Deputy Commissioner for Safety.

Norris performed the duties of security director as well as his own duties, receiving excellent reviews, but was not promoted. Norris reasonably believed that he would receive the promotion where he was consistently the top-qualified candidate. Based upon his consistent, top-ranking, he reasonably believed that he would be promoted based upon merit, not realizing that his lack of a political sponsor was one permanent obstacle to any promotion.

In July of 2006, the position was posted and Norris, who had been performing the director's duties since 2003, applied for the director's position. Norris was told that he was not on the candidate list and would not even be interviewed for the director position even though he was performing the duties of that position.

Frustrated, Norris confronted a superior, Lonergan, who agreed to assist Norris on the condition that this assistance was concealed from Jan Arnold, a policy-maker at DOA.[1] Lonergan reported that Arnold had changed the procedure for filing the position, substituting the prior procedure with a "lottery" system. Norris was informed that Arnold pulled names for the candidate list via a "lottery" and that Norris had just been unlucky in not being "pulled."

Based upon the actions of DOA and Arnold, Norris filed a complaint with the *Shakman* monitor and the Inspector General for the City in August of 2006. Norris reported the facts, as set out above and in the complaint, including conversations concerning Norris' lack of support from a political .

The Shakman monitor uncovered the egregious evidence of Defendants' wrongdoing. Specifically, the monitor found that Norris' file had been changed to indicate that he had *no safety or supervisory experience*. Again, Norris had been performing the director's duties with excellent performance reviews for three years while being paid at a lesser position salary. The monitor stated that Norris should have been the lead candidate once again as he had when he applied in past years.

Instead of rectifying the discrimination, Defendants openly retaliated against Norris for notifying the authorities. Defendants blatantly deviated from past promotion practice and took a number of actions directly designed to deny Norris the opportunity to even apply for the position whose duties he had been successfully performing for years.

On September 20, 2006, Norris received a letter stating that he could now apply for the director position, *but only if he requested to be interviewed by September 18, 2006*. This letter was postmarked "*September 19, 2006.*"

Also, a number of disparaging comments were made to Norris telling him to drop the matter and that he would be disappointed. Norris learned that Jan Arnold made disparaging comments about him. Norris also was told that his name was not on the candidate list but the list included a former employee who had been fired by DOA previously.

After the September 2006, interviewing process, Norris was once again found to "listed " as the top candidate. *The list was "thrown out."* For the third year in a row, the position remained unfilled and Norris continued to perform the duties associated with the director's position. Having

---

[1] Jan Arnold is no longer employed at DOA, based upon information and belief Plaintiff believes that Arnold was involuntarily terminated.

2

notified the *Shakman* monitor and the Inspector General, and having once again been found top candidate, Norris reasonably believed that corrective action would be taken.

Instead, Defendants, once again, altered the promotion process in an attempt to negate Norris' well-established position as the top-ranked candidate for the job. Defendants gave no notice that they were interviewing, once again for an open director position and totally deviated from the standard promotion process as outlined in the complaint. There were no interviews and no list of ranked candidates. During this last promotion "process", Norris learned that the leading candidate was a man with strong backing from the 11th Ward and that another politically connected, but unqualified candidate was in the running.

In frustration and in order to prove that this process was politically-motivated and discriminatory, Norris took the information about these politically-connected candidates and sent it to himself in sealed envelopes via registered mail, *well-before the selection process was completed*. These envelopes remain sealed and ready for inspection by this Honorable Court. As predicted, the candidate from the 11th Ward got the director job, and no list or information about ranking or qualifications was released in contradiction to past practices.

Defendants have consistently taken steps to deny Norris promotion to a position he is not only qualified for but has been performing without pay, for years. Indeed, the Defendants incrementally escalated improper deviations in the established promotion process to deny Norris promotion and insure that the top positions are given out to politically-connected candidates only. Instead of being chastened by the scrutiny of the *Shakman* monitor, Defendants boldly politicized the promotion process to exclude Norris and arrogantly set about handing the open director position to less-qualified but politically-favored candidates.

In 2007, Defendants' boldly political behavior resulted in the realization that politics, or rather Norris' lack of a political sponsor barred any promotion. Most importantly, Defendants engaged in conduct which was specifically designed to deny Norris the opportunity to even apply for the promotion and when that failed they "threw out the list" ranking him again as top candidate and initiated another closed and secretive promotion process that finally enabled Defendants to promote a less-qualified political insider.

Norris has certainly provided sufficient well-pled facts to insure the opportunity to conduct discovery and garner additional information supporting his claims. As detailed in the complaint, Norris served as the director for three years while continually being the denied promotion for

political reasons. Despite being consistently ranked as the top candidate, Defendants would not promote him, reserving that salary as apolitical plum to be given to the person with the requisite connections. Particularly egregious is the fact that this behavior continued and escalated despite notice that it was being scrutinized by the federal monitor. Defendants should not be allowed to continue to snub their collective noses at the prohibition against political promotions and retaliation against whistleblowers. As set out in detail below, Norris' complaint is suffiently pled to withstand the drastic measure of dismissal at this stage.

### B. Standard on a Motion to Dismiss

As this Honorable Court is well-aware, court may not dismiss a claim pursuant to Rule 12(b)(6) where the plaintiff is able "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court is bound to accept as true all well pleaded factual allegations and draws all reasonable in the plaintiffs' favor. McCullah v. Gadet, 344 F3d. 655, 657. (7th Cir. 2003).

Under the notice pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atlantic Corp.. v. Twombley, 127 S. Ct. 1955, 1964 (2007). A complaint need not provide detailed factual allegations. Twombley at 1964-1965. Plaintiff's complaint goes beyond pleading mere conclusions and states specific actions, as well as names, or titles of the relevant individuals plaintiff intends to depose and provides dates upon which significant and relevant facts took place.

A complaint is sufficient if it includes enough factual allegations to raise a right to relief above a speculative level. Twombley, 127 S. Ct. at 1965. The Court in **Twombley** stated, in relevant part, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombley at p.1965. Defendants imply that a higher bar should be employed, however, it is clear that Norris has pled sufficient facts to proceed as further set out below.

### C. Norris Has Pled Sufficient Facts to Demonstrate That Defendants Violated His Property Interest in His Reputation By Multiple Defamatory Actions.

An examination of relevant authority shows that Norris has clearly met his burden at this stage of the proceedings. The United States Supreme Court has recognized that when an individual is defamed by a public official it will constitute a depravation of "liberty" or "property"

4

without due process of law, actionable under Section 1983 where a state statute protects that individual against such defamation or, in the alternative, protects an individual whose reputation is injured by the remarks of a public official and additionally suffers a 'tangible' injury such as loss of employment as a result of the defamation. Paul v. Davis 424 U.S. 693, 699-710, 96 S.Ct. 1155, 1159-64 (1987).

The Chicago Municipal Code ["Code"} guarantees Norris a promotional process free from the unjustness of falsehoods. The Code regarding Human Resources rules, states, in relevant part, at 2-74-050 (6), that: The rules shall provide: [F]or promotions which shall give appropriate considerations to the applicant's qualifications, record of performance and ability. Further, the Chicago Municipal Code states, in relevant part, at 2-74-090 (B), that: No person shall make any false statement, certificate, mark, rating or report with regard to any test, certification or appointment made under any provisions of this ordinance or in any manner commit or attempt to commit any fraud, prevent the impartial execution of this ordinance and any rules issued hereunder.

The Municipal Code clearly prohibits against the exact behavior demonstrated here. Norris maintains that the Code provides that the promotional process must be free from defamatory statements in relation to any given candidate's qualifications. Here, Norris' file was altered to falsely and maliciously indicate **that he had no safety or supervisory experience.** This misconduct occurred while Norris was applying for a promotion to a job that he had been *previously and consistently been deemed the top-ranked candidate.* This defamatory and false information was transmitted to the persons reviewing his credentials, to the Shakman monitor, and the Inspector General. Clearly, Norris has pled sufficient facts to justify further inquiry into this matter where it is obvious that someone purposefully inserted false and defamatory information into Norris' file.

It is axiomatic that for defamation to exist, that the subject statements must be false. Clearly, Norris was defamed by false and harmful statements. The Defendants changed Norris' personnel file with damaging falsehoods in such a way to prevent the plaintiff from advancing. While it is true that defamatory statements by government officials that damage an individual's *reputation alone* are clearly not cognizable under as a civil rights violation, even though a state tort claim for defamation may exist. Flynn v. Sandahl 58 F.2d 283(7th Cir. 1995). Here, however, Norris clearly meets the standard as set out below.

5

To prevail, a plaintiff is obligated to show that (1) he was stigmatized by the city's conduct, (2) that the stigmatizing information was publicly disclosed, and (3) he suffered a tangible loss as a result of the public disclosure. Board of Regents of State College v. Roth, 408 U.S. 564 (1972) Under the "stigma plus" test, the stigma caused by the defamation must occur in conjunction with, or "plus," the loss of some right or governmental benefit, or a change in plaintiff's legal status, without due process of law. Roth.

Norris has extensive experience in the military providing security for missile bases. Clearly, Norris' professional reputation and indeed ability to gain employment and advancement was severely damaged by the file's notation that Norris had no safety or supervisory experience where he had been performing the security director's functions for three years at the Defendants' request.

In 2006 plaintiff's applicant/personnel file was marked with falsehoods regarding his safety experience and supervisory experience. Less than a year later, plaintiff was not permitted to *even interview* for Safety Director as result of this notation in his personnel file regarding a purported lack of safety experience.

Obviously, the city's conduct stigmatized him personally and professionally. Personally, his truthfulness and character have been called into question as people will rightly conclude that he has misrepresented his qualifications. Professionally, along with the attack upon his truthfulness, all his experience and knowledge were negated by the falsehoods written upon his file. Clearly, these falsehoods concerning the very essence of his professional abilities damaged him by blocking promotion with the City and destroyed the possibility of other opportunities at similar employment with other employers. These falsehoods resulted in injury to Norris and they were communicated to others.

The conduct of the defendant City here goes well beyond the conduct in other cases where plaintiffs sought section 1983 relief for mere misstatements in employee review or performance files. See e.g. Cannon v. Palm Beach 250 F.3d 1299, Buxton v. City of Plant City 871 F.2d 1037(11th Cir 1989). The defamatory writings upon Norris applicant file were not simply limited to the locus of the plaintiff's workplace. His entire file was marked in such a way to completely discredit his knowledge, experience, credibility and ability to hold the position for which he was qualified.

This file was conveyed outside of the city body to a court appointed monitor ordered by

6

Judge Anderson to over see irregularities in city hiring practices. The intention of the defendant is strikingly clear. The defendant was not just satisfied to diminish the plaintiff's qualifications. The defendant sought to destroy his chance at being considered for any safety job whatsoever and this to the very person appointed to ferret out hiring and promotional irregularities at the City of Chicago. This conduct alone is shocking as the falsehoods strike at the very heart of the plaintiff's ability to earn a living.

Further, these actions are shocking when Norris' employment history is reviewed. Norris was asked to act as the director and performed the director's duties without pay for years. During this time, Norris was consistently found to be the top candidate to actually fill that position. When Norris persisted in trying to advance to the supervisor position, he was punished by defamatory statements and the Defendant repeatedly changed hiring practices in an attempt to bar Norris from even interviewing.

The monitor, Noelle Brennan, appointed by Judge Anderson was not within the direct employment of the City and she was specifically appointed by Judge Anderson to with investigate *Shakman* decree violations. The plaintiff maintains that this alone obviously constitutes publication according to the applicable case law. Flynn, 58 F.2d 283(7th Cir. 1995). Furthermore, Defendant Jan Arnold made defamatory statements about Norris to other professionals in his workplace, causing more injury to his reputation and ability to advance.

As a consequence of these falsehoods, Norris directly suffered injury and a tangible loss as he was not interviewed for the job he was seeking, foreclosing again the ability to be properly and correctly compensated for the duties he was performing for the defendant. Most egregious, the plaintiff's file remains marked in such a way as to totally discredit his abilities as a safety expert erasing years of experience and negating excellent performance reviews.

This interference with his business opportunities, constituted a deprivation of his property or liberty interest protected by the due process clause. The *Paul* Court's requirement that **defamation** by a public official must be coupled with some sort of "tangible" injury, such as loss of **employment** as a result of the **defamation** has been met. A tangible injury is an injury that, if caused by, or incurred in concert with the defamatory remarks of a public official, is sufficient to constitute a liberty or property interest protected by the due process clause. Little v. City of North Miami 805 F2d 962 (11th Cir. 1986). Norris easily meets the standards as described in *Little*.

In *Little*, a law professor brought an 1983 action against the city to challenge a City Council

7

resolution which censured the professor for improper use of public funds to represent private parties in litigation against the interests of the city. In reversing a lower court's dismissal of the action, the Eleventh Circuit held that "business eputation/goodwill is both a property and a liberty interest which is protectable under the scope of section 1983. . . . When a party alleges injury to business reputation/goodwill interests in addition to injury to personal reputation, the averments satisfy the "stigma plus" requirements of Paul for alleging a constitutionally protected property and liberty interests. Id at 969. .

Norris has suffered serious injury by from the actions of the defendants here and this count of the complaint should not be dismissed where the allegations are well-pled and clearly deserve to be explored during discovery.

**D. NORRIS HAS CLEARLY DEMONSTRATED A SUFFICIENT BASIS FOR HIS CLAIM CONCERNING THE DEPRIVATION OF HIS INTEREST IN PROMOTION.**

The Supreme Court set for the elements of a civil rights claim against a municipality in Monell v. Department of New York, 436 U.S. 658, 98S.Ct 2018 (1978). Under Monell, a section 1983 plaintiff must show (1) that he or she has suffered a deprivation of a constitutionally protected interest, and (2) that the deprivation was caused by an official policy, custom or usage of the municipality. Powe v. City of Chicago, 644 F.2d 639 (1981). Norris clearly has pled sufficient facts to survive this dismissal stage.

Plaintiff has performed, for the last five years, the duties required of the job classification for which he seeks to be promoted. In 2003, Norris was told by a Deputy Commissioner to undertake the duties of the Safety Director. The plaintiff has performed these duties without the benefit of pay, recognition, the accrual of pension rights and other emoluments of his employment. Defendant having received the benefit of plaintiff's experience, expertise and performance now seeks to deny the defendant not only compensation and benefits commensurate with his duties but now seeks deny the plaintiff a property interest in the very duties that he performs for the defendant. The defendant City directly benefited by his adherence to their direction that he perform the duties of Safety Director.

This was not a promise to perform in exchange for a title, the Department's Deputy Commissioner ordered him to perform the duties of Safety Director. The only mutually explicit understanding springing from the command that he perform the duties of Safety Director was and is that he would be compensated accordingly and be given the title. The case at bar is analogous

8

to the facts of Santella v. Grishaber, 654 F. Supp. 428 (1987). In Santella, the plaintiff agreed to perform certain job duties in exchange for a promise that he would one day be given the title associated with the duties he agreed to perform. There the court *denied* the city's motion to dismiss the plaintiff's due process clause and breach of employment counts wherer Santella, like Norris, did not receive the promotion.. Santella at 428.

Here, Norris was not only denied official promotion to the job that he was ordered to do, he was defamed and repeatedly given hope that he would ascend to the director position. Norris consistently was ranked top candidate only to denied the promotion. When he finally began to pursue remedies, the defendants actually increased their discriminatory and harmful behavior and engaged in blatant misconduct in order to give the director position to a politically connected but lesser qualified candidate.

In Perry et al. v. Sinderman et al, 408 U.S. 593; 92 S. Ct. 2694; 33 L. Ed. 2d 570; (1972), the United States Supreme Court looked beyond the strictures of a tenure system and determined that property rights are not strictly limited. "We have made clear in Roth, *supra*, at 571-572, that "property" interests subject to procedural due process protections **are not limited by a few rigid, technical forms**. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings. A person's interest in a benefit is a "property" **interest for due process** purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." Perry *citing* Roth.

In 2003, the Deputy Commissioner of Safety for the Department of Aviation told him to do the work of the Safety Director. In 2005, his superiors posted a sign on his office door that denoted his title of Safety Director. During the past five years plaintiff was in constant communication with his superiors at MDW and ORD and the Chief Administrative Officer for the Department of Aviation as he conducted the business of Safety Director at Midway Airport. These outward manifestations regarding the plaintiff status and knowledge as to plaintiff's function within the DOA on the part of the defendant city evidence that property interests subject to procedural due process protection accrued to Norris.

Clearly, Norris has a due process right and demonstrated an attendant violation of that right in his well-pled facts. Norris provided the City with his expertise and performed the duties required by the Safety Director. Norris repeatedly interviewed and had his hopes raised by being the top-ranked candidate. The City consistently deprived him of promotion and consistently

changed the procedure for promotion specifically to deny promotion to Norris in favor of a *political* candidate.

Further, Defendants were well aware of his status within the DOA as at one point in 2005 the city attempted to bestow the title of Safety Director upon him. The purpose of this move was not honorable. Instead it was a ploy to –once again- deny him the promotion. This is true because the defendants simultaneously changed the promotion rules again to state that an "acting director" **could not actually be promoted to the director's position.** Once again, in a suspect manner, the city failed to follow its own procedures and changed them to give politically-favored persons an obstructed shot at the top spots-despite their qualifications-or lack thereof. (See complaint at paragraphs 33 &34.) Plaintiff maintains that facts applicable to his case are to be granted the wide protections contemplated by the Supreme Court in Perry and respectfully requests that this claim should not be dismissed..

### E. NORRIS HAS DEMONSTRATED A VIOLATION OF HIS DUE PROCESS RUGHTS ENTITLING HIM TO FURTHER REVIEW AND DISCOVERY.

Judge Posner writing for the Seventh Circuit Court of Appeals noted that "a *routine* denial of a promotion to a position for which there are competing applicants is not the stuff out of which a violation of due process is made." Yatvin v. Madison Metropolitan School Dist., 840 F.2d 412 ( 7th Cir.1989). The Court in Yatvin went on to state: "every such promotion (implying denial of promotion to all but one of the applicants) could spark lawsuits by the disappointed applicants." Yatvin at 417. As demonstrated repeatedly, the denial of promotion here is *anything but routine or ordinary.* Judge Posner's reasoning is sage and shows that in cases such as the present one, that extraordinary and indeed outrageous behavior used to deny a promotion, … *is* the stuff that violations of due process are made. Even more egregious is the fact that Norris was the **only qualified** candidate (there were no "competing applicants") for years. Specifically, Norris was the only qualified candidate until Defendants altered the promotion process and performed it under the guise of secrecy.

Again, a review of the well-pled facts here shows that the case at bar is extremely distinguishable from Yatvin. First, plaintiff was on at least one occasion, in 2005, the only applicant on the eligibility list. The plaintiff was told [without further explanation] by the defendant that since his was the only name appearing on the 2005 list that this list **would be thrown out.** (See paragraph 35 and 36 of plaintiff's complaint)

10

On a prior occasion, in 2003, the plaintiff was one of two names on the eligibility list. In relation to *that* list, the defendant City was told by at least one DOA employee that the plaintiff Norris was more qualified than the other individual whose name appeared on the list. Despite this, the defendants refused to hire the plaintiff into the position of Safety Director.

In 2006, plaintiff's third attempt at actually securing the position, (the position plaintiff was performing for the defendant) defendant attempted to deny the plaintiff the ability to interview by intentionally sending the plaintiff a notice to interview *after* the deadline to submit qualifications for interviewing had passed. (see paragraph 53 of plaintiff's complaint.) The defendant city also lied to the plaintiff when the defendant told the plaintiff that he was not on the 2006 eligibility list as the list was compiled by "lottery." (paragraph 47 of the plaintiff's complaint) In 2007, the plaintiff was not even given an opportunity to apply for the position he occupied as the job vacancy was not posted.

Obviously, the defendant consistently prevented the plaintiff from securing the benefits associated with the performance of his duties as, oddly enough, demanded by the plaintiff. The behavior of the defendant in relation to the plaintiff is *totally inconsistent* with the notion of "random and unauthorized acts." Defendant's contention is that " a long line of cases has firmly settled that deprivations of property resulting from "random and unauthorized" acts of state employees do not constitute a violation of the procedural requirements of the Fourteenth Amendment..." Hudson v. Palmer, 468 U.S. 517 (1984); Parrat v. Taylor, 451 U.S. 527(1981). While generally that may be true, the actions of the defendant in relation to Norris, rather than being "random and unauthorized" were consistent, formal and even became predictable as evidenced by the communication that the plaintiff had with his superiors over a five-year period.

Plaintiff maintains that the facts in Powe v. City of Chicago, 664 F.2d 639 (1981) is illustrative of the type of municipal conduct that when alleged is sufficient to withstand a dismissal motion. The plaintiff in Powe did **not** point to a *specific, articulated* policy of the city, rather the court held that if the facts alleged, together with reasonable inferences drawn from them, could lead a reasonable fact-finder to conclude that the actions of the city employees were the product of some policy or custom of the municipal entity, then *that was sufficient to withstand a motion to dismiss.* Id at 650.

As argued above, the reasonable inferences from the often outrageous behavior of Defendants leads to many inferences, all of which support Norris' claims. Defendants did not want to promote this particular plaintiff but were attempting to promote politically connected individuals

with none of the qualifications that Norris' had. Norris clearly was qualified-in fact he has been performing the director job, yet even that fact was the subject of an attempt to negate Norris' candidacy when the rules were changed-yet again-to preclude an "acting director" from applying for the job.

These facts are well-pled and sufficiently egregious on their face to survive dismissal. Discovery will undoubtedly reveal more Information and reasonable inferences. For example, political considerations may underlie the city's conduct. Also a meticulous safety director may force an agency to follow what it thinks are cumbersome and expensive safety rules.

Another inference could be that the city is receiving the benefit of a job well done *without having to actually pay* for it. Without the benefit of discovery, the plaintiff is hard pressed to determine if this is an isolated incident directly solely at him or a widespread practice. The fact is that inferences can be drawn *ad infinitum.*

Powe stands for the proposition that "where a plaintiff alleges a pattern or a series of incidents of unconstitutional conduct, then the courts have found an allegation of policy sufficient to withstand a dismissal motion." Powe at 650. Here, Norris must be given an opportunity to present his argument that the defendant City's reliance upon his abilities proceed to discovery to determine the culpability of the defendant. A complaint need not provide detailed factual allegations. Twombley at 1964-1965. Plaintiff's complaint goes beyond pleading mere conclusions and states names, or titles of the relevant individuals plaintiff intends to depose and provides dates upon which significant and relevant facts took place. Thus plaintiff's complaint includes enough factual allegations to raise a right to relief.

## F. NORRIS HAS SUFFICIENTLY PLED *SHAKMAN* VIOLATIONS.

Plaintiff filed this civil action under the Agreed Order and Settlement Accord stemming from the adjudicated case Shakman v. Democratic Party of Cook County, No. 69 C 2145. On July 26, 2005 the plaintiffs in Shakman filed an Application to Hold the City of Chicago and its Mayor in Civil Contempt for Violations of the Court Orders. In response to the *Shakman* Motion, Judge Wayne Anderson issued an Agreed Settlement Order and Accord along with that order was an Order Appointing a Court Monitor and Counsel on August 2, 2005.

Defendant in its motion to dismiss neglected to recognize the plaintiff's rights in relation to the Agreed Settlement Order and Accord. On March 21, 2007, the Defendant city in fact signed the Agreed Settlement and Accord. ("Accord") ( Accord attached as Exhibit "A")

12

For the reasons previously cited, the plaintiff over a five-year period suffered adverse employment actions which under Shakman v The Democratic Organization of Cook County, 481F.Supp.1315 (7th Cir. 1979) and it progeny has been held to include not only discharge and demotion but also a government entity's **refusal to promote**, transfer, recall after layoff or even hire an employee. Rutan v. Republican Party of Ill., 497 U.S. 62, 79. (1990) The defendant city's only basis for seeking a motion to dismiss is that the plaintiff's complaints **are time barred.** Plaintiff, among other points of authority, maintains that instant case is not time barred as the defendant's conduct over the previous five to six years constitutes a "continuing violation." See e.g. Galloway v. General Motors Service Parts Operations, 78 F.3d 1164(7th Cir.1996)

Defendant's assertion of this defense at this juncture is premature. Timeliness is a defense not properly raised in a dismissal motion unless it is patent that the claim is meritless due to its untimeliness. Teigen v. Renfrow, 511 F.3d 1072 (10th Cir. 2007)

In Teigen, the court cited the writings of Judge Posner from Heard v. Sheahan,253 F.3d at 219-220, to explain the proper invocation of the "continuing violation" doctrine. The court quoted Judge Posner, who wrote, the [continuing violation doctrine exists,] "to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought. It is a doctrine not about a continuing, but about a **cumulative**, violation." Teigen citing Sheahan. [emphasis added]

Plaintiff was subjected to a series of events that took place over more than a five-year period where he in good faith continued to work and apply for a promotion that he was consistently found qualified for.. Defendant incredibly contends : "Thus it should have come as no surprise to Norris when he learned in 2007 he was not on the list of candidates to be interviewed for the Safety Director's position. In other words, Norris clearly knew at some point in 2006 that he was not going to be promoted to the position of he sought...." (Defendant's Memo. at page 10.) Clearly, this is a factual dispute not subject to dismissal. This assertion is disingenuous as defendant knew or should have known that the plaintiff had complained to its own Office of Inspector General and to the Shakman Monitor with the express intention of salvaging his promotional opportunity.

Plaintiff maintains that the actions of the defendant city in 2006 directly affected his status in relation to the 2007 eligibility list. For it was in 2006 that his file was marked in such a way to depict that he had no safety or supervisory experience. The result was that the city refused to interview plaintiff as they could properly rely upon the fact that plaintiff's safety and supervisory experience no longer factored into his skill set. In other words, the city destroyed his professional reputation

13

the previous year. It should also be noted that the city in its memo footnoted the 2007 adverse employment action. The foot note states "Although Norris alleges that in September 2007 he was not on the list of candidates to be interviewed for the Safety Director position, Complaint at para. 60, he does not allege that he applied in 2007 for that position." Plaintiff did not apply for the position as the city failed to post the vacancy for the position, thus plaintiff never had knowledge of the vacancy.

The Accord among other provisions provided employees who claimed to have been the subject of past political discrimination the right to enter a class and seek monetary compensation from a 12 million dollar pool set aside by the city to compensate such victims. The provisions of the accord provided for the filing of a complaint from which triggers certain rights. Defendant filed his form on September 26, 2007. Plaintiff filed his accord complaint form immediately upon learning that he was excluded from the 2007 eligibility list.

The conduct of the city in relation to plaintiff's continued status in the DOA constitutes a "continuing violation." The defendant contends that Plaintiff failed to file a complaint within 180 days of the July 2006 complaint where he learned that the city was going throw out the list upon which he was ranked as most qualified. At that time, plaintiff had complained of this discriminatory act to both the Shakman Decree Monitor and to the Office of the Inspector General. The Office of the Shakman Monitor contacted the plaintiff. These matters are clearly facts in dispute, possible defenses for Deefendant and not subject to dismissal.

In the alternative and to the extent that the plaintiff was diligent in pursuing his claims internally with the defendant city, any bar based on a statute or period of limitation must be considered in light of the doctrine of equitable tolling. Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." Cada v. Baxter Healthcare Corp., 920 F.2 446 (7thcir.1990) This doctrine does not assume a wrongful – or any – effort by the defendant to prevent the plaintiff from suing. It differs from [the discovery rule] in that the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant. Smith v. Chicago Heights, 951 F.2d 834 (1992). To say that plaintiff relied upon the Shakman Monitor and the Inspector General's Office to ascertain how his rights were being affected is an understatement. Plaintiff filed this lawsuit within 180 days of learning that the

14

representative from the Shakman Monitor's office was under the false belief that Norris had been hired the year before. Again, there are factual issues in dispute.

### G. THE WHISTLEBLOWER STATUTE SPECIFICALLY INCLUDES GOVERNMENT AGENCIES INDICATING THE LEGISLATIVE INTENT THAT THEY CANNOT ESCAPE LIABILITY WHEN THEY RELTALIATE AGAINST EMPLOYEES WHO REPORT IMPROPRIETIES.

Norris filed his amended complaint in March of 2008. The Whistleblower statute in effect at that time clearly states that government is not immune. Obviously, the legislative intent is that government should be held responsible under the statute's provisions. Here, the facts of this case show that Norris was punished when he reported the irregularities in the promotion process to the Shakman monitor.

Clearly, plaintiff here was the victim of the politically-motivated discrimination that *Shakman* has sought to eradicate for decades. Defendants actually became more aggressive in their mistreatment of Norris after he reported them to the monitor. Where the mostnrecent version of the complaint was filed in 2008 and where the current version of the Whistleblower statute indicates the legislative intent to make government accountable, this complaint should not be dismissed based upon a version of the statute that is no longer in effect.

Wherefore, the plaintiff respectfully requests that this Honorable Court deny the defendants' dismissal motion and set a schedule for discovery by the parties.

Respectfully submitted,

Martin M. Stack

Martin M. Stack
100 West Monroe
Suite 1612
Chicago, Il 60603
312-372-5695