IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS NORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Ronald A. Guzmán |
| v. | ) | |
| | ) | No. 07 C 6776 |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff has sued the City of Chicago ("the City") for its alleged violations of the Fourteenth Amendment, the consent decree entered in *Shakman v. Democratic Organization of Cook County*, 69 C 2145 (N.D. Ill. 1972) and the Illinois Whistleblower Act. The case is before the Court on the City's motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, the Court grants in part and denies in part the motion.

**Facts**

Plaintiff was hired by the City's Department of Aviation ("DOA") in 1997 as a Safety Specialist III. (First Am. Compl. ¶¶ 17-18.) He held this position for six years, receiving excellent employment reviews. (*Id.* ¶¶ 19- 20.)

In 2003, plaintiff's supervisor, the Safety Director at Midway Airport, left the City. (*Id.* ¶ 25.) As a result, DOA posted the vacant position and plaintiff applied for it. (*Id.* ¶¶ 23-24, 26.) At about the same time, plaintiff was told by DOA's Deputy Commissioner of Safety that he should perform both his own job duties and those of the Safety Director until the job was filled. (*Id.* ¶¶ 27-28.)

Ultimately, plaintiff and one other applicant were found by the City to be qualified for the Safety Director position. (*Id.* ¶ 30.) The other applicant was Mark McInerny, a DOA police officer with no previous safety experience. (*Id.*) McInerny, however, was a life-long resident of the City's 11th Ward, as was John Townsend, the man responsible for filling the Safety Director position. (*Id.* ¶¶ 29-30.)

Townsend "openly stated that he favored" McInerny, though at least one DOA employee told him that plaintiff was more qualified. (*Id.* ¶ 31.) Moreover, Townsend told two DOA employees that he would leave the position vacant rather than hire plaintiff. (*Id.* ¶ 31.) No one was hired as Safety Director at that time, and plaintiff continued to perform the duties of both the Safety Specialist III and Safety Director positions. (*Id.* ¶ 32.)

DOA again posted the Safety Director position in 2005. (*Id.* ¶ 35.) Because McInerny had recently been promoted within the DOA's police department, plaintiff's was the only name on the list of qualified candidates. (*Id.*) Instead of getting the job, however, plaintiff was told by his supervisors that, because of the dearth of candidates, the position would remain open. (*Id.* ¶ 36.)

The job was posted once more in July 2006, and plaintiff again submitted an application. (*Id.* ¶ 39.) Around the same time, however, plaintiff was told by his supervisor, William Lonergan, that he would not get the Safety Director job because he "did not have the right people behind [him.]" (*Id.* ¶ 40.)

On August 18, 2006, McInerny told plaintiff that plaintiff's name was not on the list of applicants to be interviewed for the Safety Director job. (*Id.* ¶¶ 41-42.) Afterwards, plaintiff asked Lonergan why his name was not on the list (*Id.* ¶ 43.) Lonergan said he would investigate but told plaintiff not to mention the investigation to Jan Arnold, DOA's

Chief Administrative Officer, because Lonergan did not want to get into trouble with her. (*Id.* ¶ 44.)

At about the same time, Arnold made a number of disparaging comments to or about plaintiff. (*Id.* ¶ 56.) She referred to him as a "Neanderthal," made disparaging remarks about his work to other DOA employees, and refused to discuss safety issues with him. (*Id.*)

On August 22, 2006, plaintiff called the offices of the *Shakman* Decree Hiring Monitor and the Inspector General to complain about the omission of his name from the list of applicants to be interviewed. (*Id.* ¶ 45.) Sometime thereafter, Lonergan told plaintiff that, according to Arnold, the interview candidates were chosen by lot and plaintiff had not been "lucky enough" to be selected. (*Id.* ¶¶ 46-47.)

Plaintiff then filed a written complaint with the *Shakman* Decree Monitor and was interviewed by William Rimkus, a member of that office. (*Id.* ¶ 48.) Rimkus told plaintiff that he was qualified for the Safety Director position and should have been the leading candidate for it but was not because his "file had been marked in such a way to show that [he] did not have any safety . . . or . . . supervisory experience." (*Id.* ¶¶ 49-50.)

On September 7, 2006, Lonergan's assistant told plaintiff that she realized his name should be on the candidate list, and she arranged for it to be added. (*Id.* ¶ 52.)

Subsequently, plaintiff received a letter from Arnold, which said he had been selected for an interview for the Safety Director position and should contact the office by September 18, 2006 to arrange it. (*Id.* ¶ 53.) Plaintiff received the letter, which was postmarked September 19, 2006, on September 20, 2006. (*Id.*)

Nonetheless, plaintiff requested, and was given, an interview for the job. (*Id.* ¶ 57.) Soon after, however, he was told "unofficial[ly]" by his supervisors that he would not get

3

the job and the candidate list on which he was ranked most qualified (presumably the 2006 list to which his name was belatedly added) was going to be "throw[n] out." (*Id.* ¶ 59.)

In September 2007, plaintiff learned that the DOA had yet again conducted interviews for the Safety Director position and his name had not appeared on the list of qualified candidates. (*Id.* ¶ 60.) Plaintiff again complained to the *Shakman* Monitor and the Inspector General. (*Id.* ¶ 64.)

In December 2007, plaintiff filed this suit alleging that he was denied a promotion to Safety Director because of political considerations in violation of the Fourteenth Amendment, the *Shakman* consent decree and state law.

## **Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but plaintiff must make sufficient "[f]actual allegations . . . to raise [his] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quotation omitted).

In Count I, plaintiff seeks damages pursuant to 42 U.S.C. § 1983 for the alleged deprivation of his property interest in the promotion to Safety Director. (First Am. Compl. ¶¶ 69-87.) Plaintiff has such an interest only if state law gives him a "claim of entitlement" to the promotion. *Miyler v. Vill. of E. Galesburg*, 512 F.3d 896, 898 (7th Cir. 2008). He contends that the City ordinance governing career service employment does just that. (Pl.'s

Mem. Opp'n Def.'s Mot. Dismiss at 5); *see* City of Chi. Municipal Code § 2-74-050(6) (authorizing City's Commissioner of Human Resources to issue rules providing for, among other things, "promotions [that] . . . give appropriate considerations to the applicant's qualifications, record of performance and ability"); *id.* § 2-74-090(B) ("No person shall make any false statement . . . [or] mark . . . with regard to any . . . [career service] appointment . . . or in any manner . . . prevent the impartial execution" of the ordinance and rules pertaining to career service employment), available at http://www.amlegal.com/library/il/chicago.shtml, (follow "Municipal Code" hyperlink; then follow "Title 2" hyperlink).

However, the Seventh Circuit, in cases involving similar civil service ordinances, has disagreed:

> [T]hese sergeants did not have a property interest in [a] rank . . . they had not yet attained . . . . It is true that state law requires promotions of government employees . . . to be on the basis of ascertained merit and seniority in service and examination. . . . Th[at] create[s] an expectation that the examinations used for promotions in the civil service will be fair but, as the Illinois courts have held, not so firm and definite an expectation as to be "property" in a constitutional sense. For it is not the examination that the applicant is interested in – no one likes taking tests – but the job.

*Bigby v. City of Chi.*, 766 F.2d 1053, 1056 (7th Cir. 1985) (quotations and internal citations omitted); *see United States v. City of Chi.*, 869 F.2d 1033, 1036 (7th Cir. 1989) ("Illinois law does not create an entitlement to a promotion" in public employment). Because the Municipal Code does not give plaintiff a property interest in the promotion or the promotion process, his failure to be considered for or awarded the Safety Director position cannot be the basis for a due process claim.

Plaintiff also contends that the Arnold's derogatory comments and the alteration of his personnel file deprived him of occupational liberty, another interest protected by the

5

Fourteenth Amendment. To state a claim for deprivation of occupational liberty, plaintiff must allege that "(1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed," *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991), and (3) the public disclosure "so sull[ied] [his] reputation or character that [he is] essentially . . . blacklisted in his . . . chosen profession." *Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 802 (7th Cir. 2000). Plaintiff does not allege that any of the allegedly defamatory comments or personnel file markings were publicly disclosed, so he has not satisfied the second element. *See Johnson*, 943 F.2d at 17 (stating that a due process claim based on the stigmatizing contents of a personnel file arises only when the information is actually disseminated to a prospective employer). Moreover, plaintiff affirmatively alleges that he is still employed by the City as a Safety Specialist. (First Am. Compl. ¶ 7.) Thus, he has not only failed to allege the third element, he has established that he cannot do so. The City's motion to dismiss plaintiff's Fourteenth Amendment claim is, therefore, granted.

In Count II, plaintiff alleges that the City's actions violate the consent decree entered in *Shakman*, which prohibits the City from basing certain employment decisions on political considerations. *See O'Sullivan v. City of Chi.*, 396 F.3d 843, 848-50 (7th Cir. 2005) (describing the proceedings in and results of *Shakman*). Defendant contends that any *Shakman* claim is time-barred. *See Smith v. City of Chi.*, 769 F.2d 408, 413 (7th Cir. 1985) ("We hold that the 180-day period of limitations established by Title VII applies to contempt proceedings under the *Shakman* decree."). The expiration of a statute of limitations, however, is an affirmative defense around which plaintiff need not plead. Fed. R. Civ. P. 8(c); *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004). Because plaintiff does not "plead[] too much and admit[] definitively that the . . .

limitations period has expired," untimeliness is not a basis for a Rule 12(b)(6) dismissal of Count II. *Id.*

In Count III, plaintiff alleges that the City denied him the promotion in retaliation for his complaints to the *Shakman* Decree Monitor in violation of the Illinois Whistleblower Act. (First Am. Compl. ¶¶ 112-17.) That Act prohibits employers from "retaliat[ing] against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 Ill. Comp. Stat. 174/15(b). In its current incarnation, the Act defines "employer" to include local governments and their departments or agencies. 740 Ill. Comp. Stat. 174/5. Before January 1, 2008, however, *i.e.*, when the City allegedly retaliated against plaintiff, the Act applied only to private employers. *See* 2007 Ill. Legis. Serv. 95-128 (West). Thus, plaintiff can state a retaliation claim against the City only if the 2008 amendment applies retroactively.

The first step in the retroactivity analysis is to determine whether the Illinois Legislature has clearly expressed its intent that the amendment apply retroactively. *Caveney v. Bower,* 797 N.E.2d 596, 601 (Ill. 2003) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994); *Commonwealth Edison Co. v. Will County Collector*, 749 N.E.2d 964, 971-72 (Ill. 2001)). The answer is "no." In fact, the Legislature has done just the opposite in the Illinois Statute on Statutes, which provides:

> No new law shall be construed to repeal a former law . . . , as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any

7

penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect.

5 Ill. Comp. Stat. 70/4; *Cavaney*, 797 N.E.2d at 601-02 (holding that the Statute on Statutes "clearly indicate[s] the 'temporal reach' of *every* amended [civil and criminal] statute" (emphasis in original)); *see Foster Wheeler Energy Corp. v. LSP Equip., LLC*, 805 N.E.2d 688, 694 (Ill. App. Ct. 2004) (stating that existence of an effective date in a statute is not "an unequivocal expression of legislative intent to apply the amendment retroactively" (quotation omitted)); 2007 Ill. Legis. Serv. 95-128 (making the amendments to the Act "Effective: January 1, 2008"). Because the Illinois Legislature has clearly expressed its intent that the Act apply prospectively, plaintiff's retaliation claim, which accrued before the Act applied to the City, is dismissed.

## Conclusion

For the foregoing reasons, the City's motion to dismiss [doc. no. 29] is granted as to Counts I and III, which are dismissed with prejudice, and denied as to Count II.

**SO ORDERED**.　　　　　　　　　　　**ENTERED:**

　　　　　　　　　　　　　　　　　　　*/s/ Ronald A. Guzman*

**September 17, 2008**　　　　　　　**HON. RONALD A. GUZMAN**
　　　　　　　　　　　　　　　　　　　**United States District Judge**

8